[S. F. No. 2348. In Bank.—August 30, 1905.]

## LOUIS G. KENNEDY, Respondent, v. JOHN LEE, Appellant.

CONDITIONAL SALE OF MINING STOCK—DELIVERY—PAYMENT UPON CONDITION — EXECUTORY CONTRACT — CONSTRUCTION. — In determining whether a sale of stock in a mining corporation is absolute or conditional the intention of the parties must be gathered from all the language used. The use of the word "sells" is not conclusive, when, considering the contract as a whole, the sale was executory and conditional, and the stock was delivered to enable the conditional purchaser to obtain control of the stock and the mine, and the purchase money was to be paid upon condition of such control and the making of a certain sum from the mine or the proceeds of sale thereof within four years.

ID.—TITLE TO STOCK NOT PASSED.—In such case title to the stock did not pass, notwithstanding such delivery, unless the conditions of

the sale and purchase were fulfilled, and if unfulfilled the executory contract would be at an end, and the ownership of the stock would be where it was before.

ID.—PRACTICAL CONSTRUCTION OF CONTRACT.—Where the parties practically construed the contract by recognizing the stock as the property of the seller until the conditions were fulfilled, such construction will prevail where the language used will reasonably allow it.

ID.—WRITTEN MODIFICATION OF CONTRACT—EXTENSION OF CONDITIONS—CONSIDERATION.—A written modification of the contract executed during the life of the previous contract, extending its conditions indefinitely until the requisite proceeds were realized from the mine, or by sale, rested upon a sufficient consideration.

ID. — PRESUMPTION OF CONSIDERATION FROM CONTRACT — BURDEN OF PROOF.—There is presumption of consideration to support a written contract, and the burden is upon the party assailing it to show a want of consideration.

ID.—EVIDENCE—IMPEACHMENT OF WITNESS—CONVICTION OF CRIME NOT AMOUNTING TO FELONY.—A witness cannot be impeached by a judgment of conviction of crime, though properly authenticated, where it does not show a conviction of felony.

ID.—EVIDENCE—EXECUTION OF MODIFYING CONTRACT—RECOGNITION OF RIGHTS.—Evidence bearing upon the issue as to the execution of the modifying contract, and to show the conduct of the appellant before and after the second contract, is indication of the recognition of the right of the respondent under both contracts.

ID.—CONTROL OF STOCK IMMATERIAL.—Where no rights of third parties are involved, the manner in which the appellant used her stock or manipulated other stock to get control of the corporation is immaterial, it appearing that possession of the stock was given for that purpose.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The case was transferred from the superior court of El Dorado County. Further facts are stated in the opinion of the court.

Jesse W. Lilienthal, and Garret W. McEnerney, for Appellant.

The sale was in præsenti and passed title. (*Arkansas Co.* v. *Mann*, 130 U. S. 69, 9 Sup. Ct. 458.) The provision for return of the stock was a covenant, or at most upon condition

subsequent. Conditions subsequent are not favored in law. (8 Am. & Eng. Ency. of Law, pp. 60, 61; *Elyton Land Co.* v. *S. & N. Ala. R. R. Co.,* 100 Ala. 396, 14 South. 207; *Clement* v. *Burton,* 121 N. Y. 708, 24 N. E. 1013; *Wier* v. *Simmons,* 55 Wis. 637, 643, 13 N. W. 873; *Hartung* v. *Witte,* 59 Wis. 285, 18 N. W. 175; *Parschall* v. *Passmore,* 15 Pa. St. 307; *Hoyt* v. *Kimball* 49 N. H. 322; *Curtis* v. *Board of Education,* 43 Kan. 144, 23 Pac. 98.) If the payment of the purchase money was upon contingencies, there is no breach for failure to pay before the happening of the contingencies. (*Whitehurst* v. *Boyd,* 8 Ala. 375; *McFarland* v. *Smith,* 6 Cow. 669; *Peery* v. *Cooper,* 8 Mo. 205; *Chester* v. *Phillips,* 2 Litt. 1; *Hecht* v. *Taubel,* 55 N. J. L. 419, 26 Atl. 902; *Markham* v. *Stevenson,* 15 Ill. 209.) Title having passed upon the sale by delivery, there was no consideration for any subsequent contract imposing new and onerous terms. (*Main St. R. R. Co.* v. *Los Angeles Traction Co.,* 129 Cal. 301, 61 Pac. 937; 9 Cyc. 447, 449; Page on Contracts, p. 447, sec. 1344; Parsons on Contracts, 9th ed., 475; Anson on Contracts, 102; Hammon on Contracts, secs. 332, 426.) A past consideration is insufficient. (*Ellison v. Jackson Co.,* 12 Cal. 542; *Widiman* v. *Brown,* 83 Mich. 245, 47 N. W. 231; *Blyth* v. *Robinson,* 104 Cal. 242, 37 Pac. 904.)

J. C. Campbell, Reddy, Campbell & Metson, and Campbell, Metson & Campbell, for Respondent.

The release by each of the parties from the terms of the first agreement during its life was a full and adequate consideration for the execution of the second agreement. (*Flegal* v. *Hoover,* 156 Pa. St. 276, 27 Atl. 162; *Dreifus* v. *Columbian etc. Co.,* 194 Pa. St. 475, 75 Am. St. Rep. 704, 45 Atl. 370; *Connelly* v. *Devoe,* 37 Conn. 570; *McCreery* v. *Day,* 119 N. Y. 1, 16 Am. St. Rep. 793, 23 N. E. 198; *Rollins v. Marsh,* 128 Mass. 116.) The practical construction put upon both contracts by the parties themselves must control. (*Mayberry* v. *Alhambra Addition Water Co.,* 125 Cal. 444, 54 Pac. 530, 58 Pac. 58; *Keith* v. *Electrical Engineering Co.,* 136 Cal. 178, 68 Pac. 598.)

McFARLAND, J.—This is an action brought by the plaintiff, Mrs. Louise G. Kennedy, to recover of defendant ten thousand dollars, alleged to be due her upon two certain

written agreements. .The verdict and judgment were for the plaintiff in the trial court for the amount claimed; and defendant appeals from the judgment and from an order denying his motion for a new trial.

On February 2, 1889, the plaintiff was the owner of twenty-five thousand shares of the capital stock of the corporation called the Big Cañon Gold Mining and Milling Company—being one fourth of the entire capital stock of said corporation. On that day the plaintiff and defendant executed the first agreement here involved—plaintiff being the party of the first part and the defendant the party of the second part. In this instrument it is stated that plaintiff is the owner of said stock, and has "agreed to sell" the same to the defendant, and that defendant has "agreed to buy" the same from plaintiff "upon the conditions following, that the party of the second part shall pay to the party of the first part the sum of $10,000 in United States gold coin therefor upon the happening of the following conditions." Then follow two main conditions, which are repeated in the latter part of the instrument, and are hereinafter quoted. The instrument then proceeds to state that for the consideration before mentioned and one dollar the party of the first part "sells to the party of the second part all her right, title and interest in" the said twenty-five thousand shares of stock, upon condition "that defendant shall pay to plaintiff $10,000" upon the happening of the following conditions:—

"First. That the party of the second part shall obtain control of the majority of the capital stock of said corporation, either by holding certificates of the shares of the capital stock of said corporation in his own name, or by holding proxies from the owners of any certificates of stock of said corporation, from the owners thereof, or by having the support of any of its stockholders of said corporation in obtaining a control of the majority of the shares of said corporation and controlling its management.

"Second. That the mining property of said corporation shall, within four years from the date of the execution of this agreement, realize, either by sale of said property, or by the earnings from the mine upon said property after the payment of all expenses and debts incurred in the working and development of said property and the mines therein, the sum

of forty-five thousand dollars in U. S. gold coin, and that said sum of ten thousand dollars shall be payable to the party of the first part by the party of the second part only upon the happening of the two conditions last mentioned.''

The certificate of the said stock went into the possession of defendant at the time of the agreement, and he did obtain control of a majority of the capital stock. But during the four years after the date of the agreement the said mining property did not realize either by sale or by its earnings the said sum of forty-five thousand dollars, but it is averred in the complaint that in January, 1893—before the expiration of the four years mentioned in said first agreement—the said parties entered into a second written agreement by which the terms and conditions of the first contract concerning the time of the payment of said ten thousand dollars were changed, and by which defendant agreed that he would pay said sum of money whenever he secured the forty-five thousand dollars from operating said mine, or from the sale thereof or of the capital stock of said corporation, notwithstanding anything in the first contract to the contrary as to the time he should get said forty-five thousand dollars. This averment is denied by defendant; but the evidence on that issue, although to some extent conflicting, was clearly sufficient to warrant the jury in finding that such written contract was made as alleged. It is averred and admitted that afterwards defendant did sell the said mine and receive as the purchase price therefor seventy-five thousand dollars, and that at the time of the commencement of this action he had received of said purchase money at least more than forty-five thousand dollars.

If this second contract was a valid one, plaintiff has clearly the right to recover the ten thousand dollars, and the judgment is right. But appellant contends that there was no consideration whatever for the second contract, and that therefore it was void. This contention rests upon the propositions that by the first agreement the whole title to the stock passed absolutely and unconditionally from respondent to appellant; that thereafter she had no further interest in it to transfer, or which could be the subject of a contract, or in relation to which appellant could receive from respondent any benefit which he did not already possess; that if appellant during the four years mentioned in the first contract should,

by working the mine or by selling it, realize forty-five thousand dollars, respondent would be entitled to receive the ten thousand dollars, and if he did not, although he might have done so the next day, then respondent was to get nothing; that in any event appellant continued to be the absolute owner of the stock after the expiration of the four years; and that therefore there was no consideration for the second contract, and his promise therein was wholly gratuitous. In support of this view appellant asked. the court to instruct the jury "that by virtue of the agreement of February 2d, 1889, the defendant in this case became the absolute owner of all the right, title and interest that the plaintiff Louise G. Kennedy had in the 25,000 shares"; and counsel for appellant say in their brief that "the said agreement as to the ownership of the shares *constituted a present sale.*" We do not think that these propositions can be maintained.

If the contention above stated is maintainable, it must be upon the ground that the word "sells" used in the first agreement does itself by virtue of its technical legal significance, necessarily operate to completely and absolutely transfer the whole legal title to the property, and that this inevitable result is beyond the reach of any modification by any other language of the instrument. But the effect of an instrument is not always determined by any one of its words or phrases. The document in question here is not in form a unilateral conveyance, or assignment, or bill of sale; it is—as designated on its face—an "agreement" executed by two parties and containing covenants by each; and in such case the meaning of the parties and the legal effect of the instrument are such as are disclosed by the whole instrument. (*Perkins* v. *Mettler*, 126 Cal. 105, [58 Pac. 384]; *Rodgers* v. *Backman*, 109 Cal. 552, [42 Pac. 448].) This rule of construction is well illustrated in *Herryford* v. *Davis*, 102 U. S. 235. In that case the question was whether by the written instrument there involved certain railroad cars were merely leased to a railroad company, or whether the title to the cars passed to the latter; and it was held that, considering the whole instrument, the title passed, the court saying: "Although the instrument industriously and repeatedly spoke of loaning the cars *for hire,* for four months, and delivering them for use *for hire* it is manifest that no mere bailment for hire was intended." And

in answer to the question what the true construction of the contract is the court said: ''The answer to the question is not to be found in any name which the parties may give to the instrument, and not alone in any particular provision it contains disconnected from all others, but in the ruling intention of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account.'' And so in the case at bar the answer to the question whether by the instrument here involved there was an absolute or only a conditional sale, the intention of the parties ''must be gathered from all the language they have used.''

In Benjamin on Sales (7th ed., par. 320) the third rule for determining whether or not a sale is only conditional is stated as follows: ''Where the buyer is bound by the contract to do anything as a condition either precedent or concurrent on which the passing of the property depends, the property will not pass until the condition is fulfilled, even though the goods may have been actually delivered into the possession of the buyer.'' In the case at bar the buyer was certainly to do something before the title would pass. The language is that the party of the first part ''sells'' to the appellant *''upon condition* that the party of the first part shall pay,'' etc. The sale was therefore upon condition— clearly a conditional and not an absolute sale; and the title did not pass, and was not to pass until the fulfillment of the conditions. And what were the conditions? Considering the contract as a whole, we think that the intentions of the parties as expressed therein were, that the appellant was to have possession of the stock to assist him in getting control of the corporation and the mine; that if he should succeed in doing so, then within four years he should realize out of the property by mining or by selling it forty-five thousand dollars, if he could accomplish that result, and pay to respondent ten thousand dollars, in which event the title to the stock would pass to him; and that if he should fail to accomplish these results or either of them within the four years, then the contract would end, and the ownership of the stock would be where it was before the contract was made. It was based on the probability of these results being accomplished. The contract was executory and conditional, and the general rule as to such a

contract is, that the parties have the right to change it at any time during its life; but, at all events, in the case at bar there was clearly a consideration for the second contract in the fact that by it appellant was given the right to continue to possess and control the stock, and to extend his opportunity to make a profitable sale of the property or to succeed in profitably working the mine. Moreover, this was the construction which the parties themselves evidently put on the first contract; for, in addition to the fact of the making of the second one, the preponderance of evidence shows that after the second contract appellant continued to recognize the interests of respondent in the stock; and the construction which the parties give to a contract prevails where the language used will reasonably allow such construction. (*Keith* v. *Electrical Engineering Co.*, 136 Cal. 181, [68 Pac. 598].) Again, a consideration is presumed from the fact that a contract is in form a "written instrument" (Civ. Code, sec. 1614) ; and while such presumption is often easily overcome, still the burden of doing so in the case at bar was on appellant, and we do not think that he has shown a want of consideration.

If the foregoing views are right,—that is, if our construction as above stated of the first contract is correct,—then the numerous exceptions of appellant to rulings of the court in the matters of instructing the jury, passing upon admissibility of evidence, etc., are easily disposed of. The court fully instructed the jury that plaintiff could not recover unless the second contract was in writing, and no error was committed in instructing or refusing to instruct on that subject. There was no error in refusing to admit in evidence a record of a certain judgment rendered in a court of the state of New York, which was offered by appellant for the purpose of impeaching respondent's witness J. P. Kennedy. Conceding, for the purposes of this case, that the judgment was properly authenticated, it was inadmissible because it did not show a conviction of a felony. The other objections were mainly to questions asked by respondent of witnesses bearing upon the issue of the execution of the second contract; and we think that the questions objected to were pertinent to that issue, and therefore admissible. It was proper for respondent to show the conduct of appellant both before and after the

second contract, as evidence that he understood that respondent had an interest in the stock under the first contract which he could secure by the second contract, and that after the date of the alleged second contract he recognized her rights. All this tended to show that he construed the first contract as respondent did, and increased the probability that he executed the second contract. Neither are respondent's rights in the premises lessened or affected by the manner in which appellant used her stock or manipulated other stock in order to get control of the corporation. She gave him possession of her stock for the intended purpose, and there are no rights of third parties involved. There are no other points calling for special notice.

The judgment and order appealed from are affirmed.

Lorigan, J., Henshaw, J., and Van Dyke, J., concurred.

Shaw, J., Angellotti, J., and Beatty, C. J., dissented.