[Civ. No. 14431.   Second Dist., Div. Three.   Sept. 19, 1944.]

HELEN M. NICOLAYSEN, as Administratrix, etc., Respondent, v. PACIFIC HOME (a Corporation), Appellant.

Newby & Newby for Appellant.

Roland Maxwell for Respondent.

FOX, J. pro tem.—This is an appeal by defendant from a judgment in the sum of $4,950 in favor of plaintiff as administratrix of the estate of Rosa J. Ross, deceased.

Appellant operates a home which includes hospital facilities for elderly people. Mrs. Ross, who was then seventy-five years of age, entered into a written contract with appellant corporation, on or about April 14, 1941, by which she became a so-called life member in its home. Generally, this contract provided for her maintenance and care (with certain exceptions that are not here important) for the remainder of her life, and finally for her burial if she did not leave a sufficient estate to defray such expense. The consideration paid appellant by Mrs. Ross under this contract was $7,662.50. The contract contained the following provision with respect to the right of a life member to terminate his membership in the home: " . . . *any member of the Home shall have the right at any time to terminate their membership in the Home by serving on the management One Hundred Twenty days (120) prior notice of his or her desire so to do,* and thereupon such member shall be charged an amount decided upon by the Board of Directors, not to exceed One Hundred Eighty Seven Dollars Fifty Cents ($187.50) per month from date of said member's admission to the Home until the time of said departure from said Home, and the amount so ascertained shall be deducted from said admission fee and the balance of said admission fee remaining, whether in money, property and securities or its equivalent, shall be [re]turned to such member and thereupon the Home shall be discharged

from all further obligations to such member." (Italics added.)

Upon the execution of the contract Mrs. Ross took up her residence in the home in the quarters specified in the contract. On February 17, 1942, she had a stroke and was removed to the hospital quarters of the home and five days later she had another stroke. On February 28, 1942, pursuant to the provision of the italicized portion of the above quoted paragraph of the contract, Mrs. Ross executed and caused to be delivered to appellant immediately a document which reads as follows: "To PACIFIC HOME The undersigned hereby elects to take advantage of the option given to her under the terms of the agreement dated April 14th, 1941, to terminate her membership in said home one hundred and twenty (120) days from this date.

"This notice is given pursuant to lines 1, 2, 3 and 4 of page 3 of said agreement.

"Dated: Feb. 28, 1942. X Rosa J. Ross (Her mark)

"Witnesses to mark: Harry Abeles Dr Brown Thompson."

Mrs. Ross died on March 15, 1942. Thereupon, plaintiff, as administratrix of her estate, demanded that appellant pay said estate $4,950, being the amount of the consideration that was left after deducting the sum of $187.50 per month for the period beginning with the execution of the contract and ending 120 days after the date of the above quoted notice. Appellant refused said demand and this action followed.

Appellant contends that no cause of action is alleged. This conclusion is based on the theory that the life membership contract between Mrs. Ross and the home was still in effect at the time of her death and that the above quoted notice, dated February 28, 1942, did not have the legal effect of terminating the said contract until 120 days thereafter. In our opinion this conclusion is sound.

The rights of the parties are to be determined by the applicable provisions of the quoted documents and the conduct of the parties thereunder. An examination of the italicized portion of the contract reveals that a membership in the home may be terminated by the member giving the notice therein provided and the lapse of 120 days thereafter. The giving of the notice alone does not terminate the contract. So, by the express provisions of the contract it may not be termi-

nated by a member giving notice unless and until the 120-day period after notice shall have expired.

Mrs. Ross died on March 15, 1942. She could not be a member after that date. Her membership actually terminated on the day she died notwithstanding the notice that it was to terminate 120 days after February 28, 1942. The contract of appellant was completed on the day that Mrs. Ross died. Since appellant fully performed its part of the contract it follows that appellant *is entitled to retain the con*sideration which it was paid for the services it agreed to and did render Mrs. Ross, viz., her maintenance and care during the remainder of her lifetime.

Respondent argues that the contract was terminated upon the giving of the notice and that payment of any refund that might be due was merely postponed for the period of 120 days. Under such a construction any inmate of the home, being under the impression that he was soon about to die, could terminate his contract immediately by giving the required notice, and thus favor his family or others at the expense of appellant. When the purposes which the contract expresses are considered we think it would be unreasonable to give it a construction which would permit such a result. Therefore, the 120-day provision should be held to mean what it says.

Respondent further points out that the option given Mrs. Ross in the contract provided that it might be exercised ''at any time'' and that no limitation was placed on this provision of the contract. The right, however, she was thus given to exercise ''at any time'' was not the right to terminate the contract instanter but to give the notice which would have that effect 120 days hence. Simply stated, this provision of the contract means that any member of the home has the right at any time to serve a notice on the management of his desire to terminate his membership ·in the home at the expiration of 120 days.

Provision for such notice is not without reason. It naturally takes considerable time for the home to find suitable elderly people to replace those who may desire to withdraw. Good business management would dictate that the home protect the continuity of its income by requiring its members to give a reasonable notice of their contemplated withdrawal. Only by requiring such notice can appellant make the maxi-

mum use of its available facilities and operate the home on an efficient and economical basis. A simple and effective way to accomplish such results is to require, as appellant has here, that a member give notice of his or her desire to terminate the contract at some stated future time. It is simply an adaptation of the familiar principle and practice of giving notice for the termination of the usual month to month tenancy of real property by one of the parties. ▉ The tenancy is not terminated upon the giving of the notice but upon the expiration of the period therein specified. (Civ. Code, § 1946.)

▉ It seems clear that Mrs. Ross and her counsel on February 28, 1942, understood the contract as we do, because the notice which was executed by Mrs. Ross on that date and immediately served on the home says that *"The undersigned [Mrs. Ross] hereby elects . . . to terminate her membership in said home one hundred and twenty (120) days from this date."* (Italics added.) This statement is clear and specific. There is no suggestion in this statement that the contract is being terminated on that date. On the contrary it is expressly provided that it is to terminate 120 days from that date.

This interpretation of the contract by Mrs. Ross, aided by the advice of her counsel and relatives, makes pointedly applicable the rule that "The law recognizes the practical construction of a contract as the best evidence of what was intended by its provisions," (4 Cal.Jur.Supp. (1943 rev.) § 184, p. 133), and the further proposition that "The parties, in all fairness, should be bound by the construction placed by themselves upon their agreement. . . ." (*Id.*, p. 134.) The meaning of the language of the contract seems clear, but if it can be considered doubtful or uncertain the construction placed upon it in the notice dated February 28, 1942, by Mrs. Ross and those representing her is indeed cogent and persuasive evidence of what the parties intended by its provisions (*Alexander* v. *Walling* (1930), 105 Cal.App. 525, 534-535 [288 P. 138]; *Long Beach Drug Co.* v. *United Drug Co.* (1939), 13 Cal.2d 158, 167 [88 P.2d 698, 89 P.2d 386]; *Roy* v. *Salisbury* (1942), 21 Cal.2d 176, 184 [130 P.2d 706]), and should prevail since it is in harmony with the meaning of the language used. (*Kennedy* v. *Lee* (1905), 147 Cal. 596, 603

[290 P. 886]; *Kales* v. *Houghton* (1923), 190 Cal. 294, 300 [212 P. 21].)

Respondent argues that the contract should be strictly construed against appellant on the theory that a forfeiture is involved. We do not believe that principle is applicable. The problem in this case is simply to determine when the contract was terminated.

The judgment is reversed, with directions to the trial court to render judgment that plaintiff take nothing and that defendant recover its costs.

Desmond, P. J., and Shinn, J., concurred.

A petition for a rehearing was denied October 6, 1944, and respondent's petition for a hearing by the Supreme Court was denied November 13, 1944. Shenk, J., and Carter, J., voted for a hearing.