[Civ. No. 55162. Second Dist., Div. Three. Apr. 25, 1979.]

FRANK KRIZ, Plaintiff and Respondent, v.
HELEN TAYLOR, Defendant and Appellant.

COUNSEL

Richard C. Solomon for Defendant and Appellant.

John E. McDermott, Robert T. Olmos, Patricia M. Tenoso, Richard A. Rothschild, Richard A. Paez and Pamela White as Amici Curiae on behalf of Defendant and Appellant.

Dicker & Dicker, Robert L. Dicker and Robert M. Scholnick for Plaintiff and Respondent.

OPINION

POTTER, J.—Helen Taylor (hereinafter Tenant) appeals from a December 6, 1977, municipal court judgment in an unlawful detainer action awarding Frank Kriz (hereinafter Landlord) restitution of the premises and $371 as rent and damages.

A prior unlawful detainer action by Landlord against Tenant had resulted in entry of judgment in favor of Tenant on September 1, 1977. The court therein specifically found that Landlord had breached the warranty of habitability, that his "dominant purpose" in seeking to evict Tenant was retaliation for her complaints about said breach to Landlord and to the county health services department, and that as an offset for damages suffered from this breach, Tenant was not obligated to pay rent for the month of August.

On September 8, 1977, seven days after the first judgment, Landlord served Tenant with a thirty-day notice to quit. Tenant's tender of rent for the month of September was refused. On October 12, 1977, the new unlawful detainer complaint in this action was filed. Neither the 30-day notice nor the complaint stated any ground upon which Landlord, in good faith, sought to recover possession.

Tenant demurred to the complaint on the ground that (taking judicial notice of the prior finding) "[b]ased on [Civil Code][1] Sec. 1942.5(a)(4)[2]

---

[1]Unless otherwise stated, all statutory references are to the Civil Code.

[2]Section 1942.5, subdivision (a)(4) provides: "(a) If the lessor has as his dominant purpose retaliation against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate governmental agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the

and public policy behind it, [Landlord] is precluded from evicting [Tenant] for 60 days from the date of the judgment handed down on September 1, 1977, unless he pleads the grounds upon which he, in good faith, seeks to recover possession, pursuant to California Civil Code section 1942.5(d)."[3]

Landlord filed points and authorities in opposition, asserting, "The subject Code Section does not prohibit the serving of a notice, does not prohibit the filing of a lawsuit, but, if anything at all, prohibits the recovery of possession in an action or proceeding within the 60-day period," and pointing out that the 60-day period would expire before the matter came to trial. On November 7, the court overruled the demurrer.

Tenant's answer, filed November 8, raised affirmative defenses of breach of the warranty of habitability and of retaliatory eviction in violation of section 1942.5 and "case law." A court trial was held November 30. As the engrossed statement on appeal states: "[Tenant] objected to any evidence regarding good cause to evict on the grounds that Civ. Code §1942.5(d) precludes evidence of good cause to rebut a claim of retaliatory eviction unless the facts alleged constituting good cause were first in the 30 (or 3) day notice and pleaded in [Landlord's] complaint, which had not been done here. This objection was overruled on the grounds that Civ. Code §1942.5(a) allows a landlord to give notice within sixty days and only prevents the court from awarding possession to [Landlord] within said period."

Thereafter, Landlord presented evidence that Tenant's pets created a nuisance of which other tenants complained.

At the end of Landlord's case, Tenant moved for judgment (Code Civ. Proc., § 631.8) in her favor on the ground that Landlord's action

---

payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services, within 60 days:

"...

"(4) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor."

[3]Section 1942.5, subdivision (d) provides: "Notwithstanding the provisions of subdivisions (a) to (c), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a). If such statement be controverted, the lessor shall establish its truth at the trial or other hearing."

constituted a per se retaliatory eviction "in violation of Civil Code § 1942.5 and of common law rule against retaliatory eviction announced in *Schweiger* v. *Superior Court* [(1970) 3 Cal.3d 507 (90 Cal.Rptr. 729, 476 P.2d 97)]." The motion was denied. Tenant then testified in her own defense.

No findings of fact were requested or made.[4] On December 6, 1977, the court entered judgment for Landlord awarding him $371 and restitution of the premises. On December 22, 1977, Tenant filed her notice of appeal.[5] Tenant's engrossed settled statement was filed February 28, 1978. No objection thereto was made by Landlord and on July 25, 1978, it was settled as filed.

One month after the judgment was entered, Tenant vacated the premises and Landlord filed a complete satisfaction of judgment, though the monetary award was not paid.

## Contentions

Tenant contends that (1) the appeal should not be dismissed as moot, and (2) the judgment must be reversed because section 1942.5, subdivision (a), prohibits serving eviction notices during the 60-day period unless they meet the requirements of subdivision (d) thereof by stating the ground upon which the lessor, in good faith, seeks to recover possession.

Landlord contends that (1) the appeal should be dismissed as moot, and (2) section 1942.5, subdivision (a), prohibits only the actual entry of judgment evicting the tenant within the 60-day period.

## Discussion

### Summary

Since the construction of the retaliatory eviction statute[6] is a recurring issue, we decline to dismiss the appeal, though it is moot. In view of the

---

[4] In any event Tenant was not entitled to findings. (See Code Civ. Proc., § 632; *Hall* v. *Municipal Court* (1974) 10 Cal.3d 641, 644, fn. 2 [111 Cal.Rptr. 721, 517 P.2d 1185].)

[5] Upon appeal to the appellate department of the superior court, the judgment was affirmed. Pursuant to rule 62(a), California Rules of Court, we ordered the cause transferred to this court to settle an important question of law presented therein.

[6] We are concerned here only with the scope of section 1942.5 and do not mean to imply by anything in this opinion that this statutory defense is the exclusive remedy available to tenants in retaliatory eviction cases. The California Supreme Court has left open the question whether the common law retaliatory eviction defense announced in *Schweiger* v.

prior judgment and finding, retaliation must be deemed the dominant purpose of Landlord in attempting to terminate the tenancy. The 60-day provision of section 1942.5 is therefore applicable. Landlord's interpretation that he can serve such a retaliatory notice immediately so long as he does not recover possession within 60 days would substantially frustrate the statutory purpose that "the lessor may not . . . cause the lessee to quit involuntarily." On the other hand, the language in the statute does not support Tenant insofar as she claims that the service of a notice within such 60-day period is prohibited even if the resultant termination date falls after the end of the 60-day period. The date of termination of the tenancy is the critical date since the tenant who quits on or after such date does so "involuntarily." The 30-day notice herein resulted in the termination of the tenancy 37 days after the prior judgment. It stated no grounds upon which the lessor, in good faith, sought to recover possession. Therefore, it was ineffective to terminate Tenant's rights.

*The Appeal Should Not*
*Be Dismissed as Moot*

Preliminarily, we reject Landlord's contention that the appeal should be dismissed as moot because Tenant has vacated the premises and Landlord has filed a complete satisfaction of judgment. ■ As our Supreme Court pointed out in *Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 715-716 [106 Cal.Rptr. 21, 505 P.2d 213]: "If an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot."

It is evident that the question of the applicability of section 1942.5 "involves a matter of continuing public interest" (*id.,* at p. 715) which may evade review because the time periods involved in this statute are relatively short. Furthermore, as in *Liberty,* "appellate review has been and may continue to be thwarted by the filing of a notice of satisfaction of judgment . . . ." (*Id.,* at p. 716.)

*Landlord's Dominant Purpose Was*
*Retaliation Against Tenant*

On September 1, 1977, the municipal court, in the prior unlawful detainer proceeding, made its finding that Landlord's "dominant purpose

---

*Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97], is preempted by or supplements the section 1942.5 defense. (See *S. P. Growers Assn.* v. *Rodriguez* (1976) 17 Cal.3d 719, 729, fn. 4 [131 Cal.Rptr. 761, 552 P.2d 721]; cf. *Green* v. *Superior Court* (1974) 10 Cal.3d 616, 620, 631 [111 Cal.Rptr. 704, 517 P.2d 1168].)

in seeking to evict [Tenant] is retaliation against [Tenant] because [Tenant] complained to plaintiff and to the County Health Services Department concerning breach of the warranty of habitability and sought to secure rectification of that breach." A week later, Landlord served a 30-day notice to quit. Though, as noted by our Supreme Court in *Schweiger* v. *Superior Court, supra,* 3 Cal.3d 507, a landlord's illegal purpose found to exist one week previously is not deemed to exist "in perpetuity" and may be " 'dissipated' " (*id.,* at p. 517), there was no evidence presented in the trial court from which any such dissipation could be inferred here. Considerable evidence was offered tending to impugn Tenant's desirability as a tenant but no attempt was made to show that any new circumstances arose after the finding in question.

We, therefore, treat the case as one in which the dominant purpose of Landlord in terminating the tenancy, effective October 8, 1977, was retaliation against Tenant.

*Termination of the Tenancy "Cause[s]*
*the Lessee to Quit Involuntarily"*

The full text of the retaliatory eviction statute provides:

"(a) If the lessor has as his dominant purpose retaliation against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate governmental agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services, within 60 days:

"(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942; or

"(2) After the date upon which the lessee, in good faith, has filed a written complaint, with an appropriate governmental agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability; or

"(3) After the date of an inspection or issuance of a citation, resulting from a written complaint described in paragraph (2) of which the lessor did not have notice; or

"(4) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

"In each instance, the 60-day period shall run from the latest applicable date referred to in paragraphs (1) to (4), inclusive.

"(b) A lessee may not invoke the provisions of this section more than once in any 12-month period.

"(c) Nothing in this section shall be construed as limiting in any way the exercise by the lessor of his rights under any lease or agreement or any law pertaining to the hiring of property or his right to do any of the acts described in subdivision (a) for any lawful cause. Any waiver by a lessee of his rights under this section shall be void as contrary to public policy.

"(d) Notwithstanding the provisions of subdivisions (a) to (c), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a). If such statement be controverted, the lessor shall establish its truth at the trial or other hearing." (§ 1942.5.)

█ Landlord claims that the section does not impose any limitation upon when he may serve a 30-day notice terminating a month-to-month tenancy so long as the actual judgment evicting the tenant and the recovery of possession do not occur within 60 days of an event specified in subdivisions (a)(1) to (a)(4). Thus, Landlord contends that since Tenant was still in possession of the premises 60 days after the prior judgment was rendered against Landlord on the issue of tenantability, subdivision (a)(4) was not violated. We disagree.

█ Section 1942.5 was enacted into law as part of comprehensive landlord-tenant reform legislation. Assembly Bill No. 2033, 1970 Regular Session (Stats. 1970, ch. 1280) amended section 1942 and added sections 1941.1, 1941.2, 1942.1 and 1942.5. This bill, which established the statutory retaliatory eviction defense (§ 1942.5) also specified the conditions which rendered a dwelling "untenantable" (§ 1941.1), enunciated tenants' responsibilities (§ 1941.2), clarified tenants' rights to make repairs

themselves and deduct the cost from their rent (§ 1942), and prohibited the waiver of tenants' statutory rights (§§ 1942.1; 1942.5, subd. (c)). "[A] specific provision should be construed with reference to the entire statutory system of which it is a part, in such a way that the various elements of the overall scheme are harmonized." (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081].) Where, as here, all these provisions were passed on the same day, relate to the same subject matter and indeed were part of the same statute (Stats. 1970, ch. 1280), they are "to be read together, as if parts of the same Act" (*People* v. *Jackson* (1866) 30 Cal. 427, 430; *People* v. *McGuire* (1978) 80 Cal.App.3d Supp. 1, 4 [145 Cal. Rptr. 514]).

Landlord's interpretation would completely frustrate the obvious intent of this statutory scheme to encourage private initiative to enforce tenantability standards and would make a mockery of the remedies provided by statute. Indeed, it would nullify exercise of the remedy to "repair and deduct." To illustrate: When section 1942.5 was added to prohibit retaliatory eviction for 60 days after the date upon which a tenant, in good faith, has given "notice pursuant to Section 1942" (Stats. 1970, ch. 1280, § 5) of "dilapidations" requiring repair, section 1942 (*id.,* at § 3) was amended at the same time to provide that if the tenant waits 30 days after notifying the landlord, he is presumed to have waited a "reasonable" time so that he can make the repairs himself and deduct up to a month's rent for the cost. If landlords can immediately serve tenants with 30-day notices to quit upon receiving the tenants' complaints, tenants cannot effectively use the statutory remedy since as soon as they have the presumed right to make the repairs on the premises, they lose the right to even be on the premises. We cannot ascribe to the Legislature such "a devious legislative intent to render section 1942 ineffective as a protective measure." (*Schweiger* v. *Superior Court, supra,* 3 Cal.3d at p. 513.) ■ As remedial legislation, section 1942.5 should be liberally construed to effect its objectives and to suppress, not encourage, the mischief at which it was directed. (*Buchwald* v. *Superior Court* (1967) 254 Cal.App.2d 347, 354 [62 Cal.Rptr. 364].)

■ In addition, it is a cardinal rule of construction that every word of the statute is presumably intended to have some meaning and that " 'a construction making some words surplusage is to be avoided.' " (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Where there are several provisions or particulars, the construction should, if possible, give effect to all. (Code Civ. Proc., § 1858.) Subdivision (a) of section 1942.5 provides that the lessor may not "recover possession" or "cause the lessee to quit involuntarily." Land-

lord's claim that the statute is not violated so long as possession is not recovered by judgment within 60 days would render the latter provision "cause . . . to quit involuntarily" mere surplusage.

■ On the other hand, though we agree with Tenant that Landlord cannot immediately serve a retaliatory 30-day notice to quit, we disagree with Tenant insofar as she claims the service of a notice within that 60-day period is prohibited even if the expiration date falls after the end of that period.

The language of the statute does not support such a claim. The notice to quit does not immediately "cause the lessee to quit involuntarily" (§ 1942.5, subd. (a)). It is only a "notice of the intention to terminate" (§ 1946). As we stated in *Nicolaysen* v. *Pacific Home* (1944) 65 Cal.App.2d 769, 773 [151 P.2d 567], "The tenancy is not terminated upon the giving of the notice but upon the expiration of the period therein specified. . . ."

Moreover, if the Legislature had wanted to prohibit notices per se, it could easily have done so explicitly. (See, e.g., Mass. Gen. Laws Ann., ch. 186, § 18 (Supp. 1975); Minn. Stats. Ann., § 566.03 (Supp. 1975-76). Elsewhere in section 1942.5 the Legislature expressly refers to "notice of termination" (subd. (d)).

Nor does the legislative history support Tenant's interpretation of the statute. She has provided us with a declaration by Pete Wilson, the author of Assembly Bill No. 2033, in which he stated that he "meant to give tenants a 60-day period of respite in which they could not be bothered in any way by their landlords except for good cause," and that this included suffering a "notice to quit." ■ The understanding of former As-semblyman Wilson does not per se expose the Legislature's intent in the passage of the final bill. "In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. (*In re Lavine* (1935) 2 Cal.2d 324, 327 [41 P.2d 161, 42 P.2d 311]; *Bragg* v. *City of Auburn* (1967) 253 Cal.App.2d 50, 54 [61 Cal.Rptr. 284].) Nor do we carve an exception to this principle simply because the legislator whose motives are proferred actually authored the bill in controversy. (*Epstein* v. *Resor* (N.D.Cal., 1969) 296 F.Supp. 214, 216); no guarantee can issue that those who supported his proposal shared his view of its compass." (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590 [128 Cal.Rptr. 427, 546 P.2d 1371]; see also *Grant* v. *Adams* (1977) 69 Cal.App.3d 127, 135 [137 Cal.Rptr. 834].)

We recognize that the expression of the individual intent of the author of the bill, even though noncontemporaneous, can have some weight because "he is the one who normally presents the bill for consideration at all legislative committee hearings and on the floor of his own house." (*Campbell* v. *Board of Dental Examiners* (1975) 53 Cal.App.3d 283, 286 [125 Cal.Rptr. 694].) Here, however, the language in subdivision (a) was substantially changed after it had passed the Assembly and had gone to the Senate. Whereas the bill originally had provided that, among other things, the lessor could not "demand an increase in rent" within the 60-day period, the Senate amended it on August 6, 1970, to provide that the lessor could not "increase the rent" during that period.[7] We have been unable to find any legislative history which purports to explain this modification made by the Senate. It is, however, apparent that by changing the wording from prohibiting a "demand" for an increase to prohibiting only the actual "increase" itself, the Legislature was specifically rejecting the view that the service of notice was, per se, a prohibited act.[8]

Though we realize that the statute's effectiveness to protect tenants' exercise of their statutory rights and promote better housing conditions by private enforcement of "tenantability" standards is severely limited by its failure to give tenants a more realistic[9] period of respite, we cannot "under the guise of construction, rewrite a statute." (*Mount Vernon Memorial Park* v. *Board of Funeral Directors & Embalmers* (1978) 79 Cal.App.3d 874, 885 [145 Cal.Rptr. 275].)

The event which "causes the lessee to quit involuntarily" is not the initial service of the notice but the termination of the tenancy by the expiration of the notice. The tenant who quits on or after that date does

---

[7]As introduced by its author, Assemblyman Wilson, on April 1, 1970, the bill originally provided: "No action or proceeding to recover possession of a dwelling unit may be maintained against a lessee, nor shall a lessor otherwise cause his lessee to quit a dwelling unit involuntarily, nor demand an increase in rent from such lessee, nor decrease the services to which the lessee has been entitled, within 60 days . . . ." (Assem. Bill No. 2033 (1970 Reg. Sess.) § 4.) The bill passed the Assembly with essentially this same language. It was amended in the Senate on August 6, 1970, to provide that "the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services, within 60 days . . . ." (Assem. Bill, No. 2033 (1970 Reg. Sess.) § 5.)

[8]A demand for an increase in rent must be made by written notice (§ 827). The notice requirements for changing the terms of a tenancy (such as increasing rent) and terminating the tenancy are the same. (Compare § 827 with § 1946.)

[9]See, for example, section 2-407 of the Model Residential Landlord-Tenant Code (American Bar Foundation, Tent. Draft, 1969) which absolutely prohibits retaliatory evictions for six months.

so "involuntarily." The tenant no longer has a right to remain on the premises (§ 1946; *Nicolaysen* v. *Pacific Home, supra,* 65 Cal.App.2d at p. 773) and must vacate or incur the risk of being found guilty of unlawful detainer and assessed treble damages (Code Civ. Proc., § 1174). Since the termination of the tenancy "cause[s] the lessee to quit involuntarily" or suffer detrimental consequences, a landlord cannot serve a retaliatory notice which expires within the 60-day period. Landlord herein served such a notice which resulted in the termination of the tenancy 37 days after the prior judgment adverse to Landlord. The termination of the tenancy violated section 1942.5.

The judgment is reversed.

Klein, P. J., and Cobey, J., concurred.