[Civ. No. 53058. First Dist., Div. Three. Nov. 26, 1982.]

FRITZ GLASER, Plaintiff and Respondent, v.
LEWIS A. MEYERS et al., Defendants and Appellants.

**COUNSEL**

John D. Flitner, Foster, Monroe, Thurrell, Johnston & Flitner, Foster, Monroe, Thurrell, Johnston, Flitner & Wilson, and Foster, Waner, Monroe Thurrell, Johnston & Flitner for Defendants and Appellants.

Timothy J. Crowley for Plaintiff and Respondent.

**OPINION**

**SCOTT, J.**—This appeal is from a judgment awarding plaintiff $10,000 in compensatory damages in his action for retaliatory eviction.

The facts, stated in the light most favorable to the prevailing party, are as follows. In late December 1973, plaintiff Fritz Glaser and his wife, a retired couple, purchased a mobilehome and rented a space in Brookwood Mobile Home Park, owned by defendants Lewis Meyers and Ernest Thomas. On July 2, 1974, Glaser attended a Santa Rosa City Council meeting, and complained about a lack of water, and dust, at the park. On July 8, the Glasers received an eviction notice, giving them 60 days to terminate their tenancy for conduct constituting an annoyance to other tenants or interference with park management,

and failure to comply with the rules and regulations of the mobilehome park. On August 1, defendants' lawyer sent Glaser a letter informing him of the legal consequences of a failure to vacate the premises.

On about September 10, 1974, Glaser filed a complaint against defendants for declaratory and injunctive relief, requesting that any eviction be enjoined. No unlawful detainer action was ever filed against the Glasers. While no one from the mobilehome park harassed them after the notice of eviction was served, they were always fearful that they would have to move out. In June 1975, apparently while the action for injunctive relief was still pending, the Glasers moved from the mobilehome park.

A month after moving from the park, Glaser filed this action, alleging two causes of action and seeking compensatory and punitive damages. He alleged: (1) he was unlawfully charged an entry fee to rent space in the park, in violation of former Civil Code sections 789.7 and 789.8;[1] and (2) he was constructively evicted from the park by dust and a lack of water, which made the premises unfit for human habitation and forced him to vacate. Defendants cross-complained alleging interference with the business relationship between themselves and the park's other tenants.

Trial by jury was held in July 1979.[2] On the last day of trial, over defendants' objection, the court allowed plaintiff to amend his complaint to conform to proof to allege that he had been served with notice of eviction in retaliation for his complaint to the city council. The allegation that he was constructively evicted by the lack of water was deleted from the amended complaint. The jury found against plaintiff on his entry fee cause of action, but in his favor on his cause of action for retaliatory eviction; the jury awarded him $10,000 in compensatory damages, but no punitive damages. The jury also found against defendants on their cross-complaint.

Plaintiff's amended cause of action alleged that he was served with the notice of eviction in retaliation for his complaint to the city council about conditions at the park, and that as a result of the eviction notice, he was eventually forced involuntarily to give up possession of the premises. Although defendants continue to argue that they had good cause for serving the eviction notice, they do not dispute the sufficiency of the evidence to support the jury's implied finding that the notice was retaliatory. Instead, defendants contend that the elements of plaintiff's cause of action for retaliatory eviction were defined by the terms of former section 1942.5, which established retaliatory eviction as a statutory

---

[1]Unless otherwise indicated, all statutory references are to the Civil Code.

[2]In September 1976, the parties entered into a stipulation dismissing plaintiff's first action for injunctive and declaratory relief, on the ground that the issues were moot because the Glasers had departed from the park.

affirmative defense to an unlawful detainer action. That section provided in relevant part: "(a) If the lessor has as his dominant purpose retaliation against the lessee . . . because of his complaint to an appropriate governmental agency as to tenantability of a dwelling, . . . the lessor may not . . . cause the lessee to quit involuntarily . . . within 60 days:

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(2) After the date upon which the lessee, in good faith, has filed a written complaint, with an appropriate governmental agency . . . ." (Stats. 1970, ch. 1280, § 5, p. 2316.) That language has been construed to permit service of a retaliatory notice to quit during the 60-day period, as long as the termination of tenancy date specified in the notice falls after the end of that period. (*Kriz* v. *Taylor* (1979) 92 Cal.App.3d 302, 312-314 [154 Cal.Rptr. 824].) Relying on *Kriz,* defendants argue that as a matter of law they are not liable for damages because the eviction notice to plaintiff specified a termination of tenancy date more than 60 days after his complaint to the city council. In a related argument, defendants contend the court erred in refusing to instruct that retaliatory eviction is forbidden only for 60 days. Defendants' arguments rest on the premise that plaintiff's cause of action was created and defined by statute. We disagree.

■ Where a new right, one not existing at common law, is created by statute and a statutory remedy for the infringement of that right is provided, such remedy is exclusive. (*Orloff* v. *Los Angeles Turf Club* (1947) 30 Cal.2d 110, 112 [180 P.2d 321, 171 A.L.R. 913], and cases cited therein.) However, if a right was established at common law before the statutory remedy was created, the statutory remedy is usually regarded as merely cumulative, and the older remedy may be pursued at the plaintiff's election. (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 8, p. 886.)

■ Tort actions to recover damages for wilful wrongful evictions have long been recognized in California (*Barkett* v. *Brucato* (1953) 122 Cal.App.2d 264, 274-275 [264 P.2d 978], and cases cited therein; *Asell* v. *Rodriguez* (1973) 32 Cal.App.3d 817, 823-826 [108 Cal.Rptr. 566].) In *Aweeka* v. *Bonds* (1971) 20 Cal.App.3d 278 [97 Cal.Rptr. 650], the court held that a tenant who was evicted in retaliation for exercising the statutory "repair and deduct" remedy of former sections 1941 and 1942 could maintain a tort action to recover compensatory and punitive damages. (*Id.,* at p. 281; see *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 175 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R. 4th 314].)

The court in *Aweeka* based its holding on the authority of *Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97], in which the Supreme Court first recognized in unlawful detainer actions a defense that

the eviction is sought in retaliation for the exercise of statutory rights by the tenant. (*Id.*, at p. 517.) In *Aweeka,* after tenants notified their landlord that they would deduct the cost of certain needed repairs from their rent, the rent was nearly doubled, an increase which in effect constituted an actual eviction because the landlord knew the tenants would be unable to pay the increase. After denial of a preliminary injunction to prevent the increase, the tenants vacated the premises, and brought an action for damages for retaliatory eviction, among other causes of action. A demurrer was sustained without leave to amend, but the appellate court, relying on *Schweiger,* reversed. "We can discern no rational basis for allowing such a substantive defense [to an unlawful detainer action] while denying an affirmative cause of action. It would be unfair and unreasonable to require a tenant, subjected to a retaliatory rent increase by the landlord, to wait and raise the matter as a defense only, after he is confronted with an unlawful detainer action and a possible lien on his personal property [citation]." (*Aweeka* v. *Bonds, supra,* 20 Cal.App.3d at p. 281.) In light of *Aweeka,* defendants' contention that plaintiff's cause of action was of statutory origin is without merit.

■ Nevertheless, was that judicially recognized cause of action narrowed by the Legislature when it enacted former section 1942.5? If section 1942.5 supplanted rather than supplemented the retaliatory eviction defense developed by case law, it would seem to follow that the statute also defined the elements of a retaliatory eviction cause of action for damages. However, as the section was enacted prior to *Schweiger* and not in response thereto (although it was not effective until after *Schweiger* was decided), the relationship between the statutory and the common law defenses has been unclear. (See, e.g., *S.P. Growers Assn.* v. *Rodriguez* (1976) 17 Cal.3d 719, 729, fn. 4 [131 Cal.Rptr. 761, 552 P.2d 721]; see also *Kriz* v. *Taylor, supra,* 92 Cal.App.3d at p. 307, fn. 6; *Kemp* v. *Schultz* (1981) 121 Cal.App.3d Supp. 13, 17, fn. 3 [175 Cal.Rptr. 412]; cf. *Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 293 [131 Cal.Rptr. 547], disapproved on other grounds in *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 740, fn. 9 [180 Cal.Rptr. 496, 640 P.2d 115].)

Recently, however, in *Barela* v. *Superior Court* (1981) 30 Cal.3d 244 [178 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1], the Supreme Court dispelled the notion that the common law retaliatory eviction defense was preempted by statute. "The defense of 'retaliatory eviction' has been firmly ensconced in this state's statutory law and judicial decisions for many years. [Citations.]" (*Id.*, at p. 249.) ". . . California has two parallel and independent sources for the doctrine of retaliatory eviction." (*Id.*, at p. 251.) Moreover, in 1979 the Legislature repealed former section 1942.5 and reenacted it with amendments. (Stats. 1979, ch. 652, § 2, p. 2005.) Section 1942.5 now specifically states that its remedies are in addition to any other remedies provided by statutory or deci-

sional law. (§ 1942.5, subd. (h).)[3] In adopting legislation, the Legislature is presumed to have had knowledge of existing judicial decisions and to have enacted and amended statutes in the light of such decisions. (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].) We must presume, then, that subdivision (h) was the Legislature's response to judicial uncertainty first expressed in *S.P. Growers Assn.* v. *Rodriguez, supra,* 17 Cal.3d 719 as to the intended scope of the statutory defense.

■ The availability of the common law retaliatory eviction defense, unlike that authorized by either version of section 1942.5, is apparently not subject to time limitations. Rather, the question is the landlord's motive in causing his tenant to vacate involuntarily. (See *Schweiger, supra,* 3 Cal.3d at p. 517.) Nor is the only tenant conduct protected by the common law defense that conduct specified in the statute. (See, e.g., *S.P. Growers Assn.* v. *Rodriguez, supra,* 17 Cal.3d at p. 724.) As plaintiff's cause of action for damages was the counterpart of that common law defense, we must conclude that his cause of action was also not limited by the terms of former section 1942.5, and that an instruction on the 60-day time period specified in that statute was not required.[4]

■ Defendants also contend the trial court abused its discretion when it permitted plaintiff to amend his complaint to conform to proof during trial. We disagree.

The trial court has broad discretion to grant or deny an amendment to a complaint at trial, and California courts have been extremely liberal in allowing such amendments to conform to proof. (*General Credit Corp.* v. *Pichel* (1975) 44 Cal.App.3d 844 [118 Cal.Rptr. 913]; 3 Witkin, Cal. Procedure (2d ed.

---

[3]As reenacted, section 1942.5 also expanded the statutory retaliatory eviction defense. The time period during which a tenant is protected was extended to 180 days, and the grounds for which retaliation is prohibited were enlarged. (§ 1942.5, subds. (a) and (c); *Barela, supra,* 30 Cal.3d at p. 250.) The 1979 amendments also expressly authorized a tenant's action for damages, both consequential and punitive, for retaliatory acts by the landlord. (§ 1942.5, subd. (f); see *Review of Selected 1979 California Legislation* (1979) 11 Pacific L.J. 573, 601, 602.)

[4]Shortly after its enactment, former section 1942.5 was described and criticized as ambiguous. (Cf. Note, *Retaliatory Eviction in California: The Legislature Slams the Door and Boards Up the Windows* (1972) 46 So.Cal.L.Rev. 118; Note, *Retaliatory Eviction as a Defense to Unlawful Detainer—Alternative Approaches?* (1971) 22 Hastings L.J. 1365.) Despite reenactment of that section with amendments, and its judicial construction in *Barela, supra,* 30 Cal.3d 244, ambiguities remain which will ultimately require legislative or judicial resolution, but which we need not resolve in this case. First, the Legislature has expressly provided that the remedies provided by section 1942.5 are in addition to other remedies provided by statutory or decisional law. However, if the statute's time limitations can be avoided by asserting the common law defense, of what use are those time limits? Second, as construed in *Barela,* section 1942.5 seems internally inconsistent. That court construed subdivision (c) to enable a tenant to defend against an unlawful detainer action by alleging that the eviction was in retaliation for *the lawful exercise of any rights under the law.* As a tenant is apparently protected indefinitely by subdivision (c), can a tenant who has exercised his or her rights to repair and deduct or who has complained to the landlord regarding tenantability, avoid the time limits of subdivision (a) by relying on subdivision (c)?

1971) Pleading, § 1058, pp. 2633-2634.) Even an amendment which gives rise to a separate cause of action is permitted if recovery is being sought " 'on the same general set of facts,' " and if the amendment is not prejudicial to the party against whom it is offered. (*General Credit Corp., supra,* at p. 850.)

The heart of this dispute was why plaintiff left defendants' mobilehome park. According to plaintiff, the water supply at the park was frequently inadequate. When he complained, defendants served him with a notice of eviction. Although no unlawful detainer action was ever filed, eventually he was forced to vacate the premises because his wife's health was so adversely affected by the notice of eviction. In other words, as a result of the retaliatory notice of eviction, he vacated involuntarily. Defendants' version of the facts is different: water supply was satisfactory; plaintiff was served with a notice of eviction for failure to comply with park rules and for disruptive conduct; plaintiff left the park voluntarily. Whether plaintiff's action is for constructive or retaliatory eviction, it is apparent that recovery was being sought on the same general set of facts in either complaint. Moreover, defendants concede that the amended complaint did not state a completely new cause of action, and defendants have failed to establish how they were prejudiced by the amendment. Defendants state they were deprived of the opportunity to cross-examine plaintiff as to defendants' motives for serving him with the notice of eviction. Defendants fail to explain, however, what additional insight *plaintiff* might have offered into *defendants'* motives.

Defendants concede that plaintiff testified about his complaints to the city council without objection. The court and counsel commenced discussing plaintiff's retaliatory eviction theory while plaintiff was still presenting his case. After plaintiff rested, defendant Thomas testified at length as to why plaintiff was served with a notice to quit.

Defendants have failed to establish that the court abused its discretion in permitting the amendment to conform to proof.

Judgment is affirmed.

White, P. J., and Feinberg, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 19, 1983.