[No. B012621. Second Dist., Div. Five. June 12, 1986.]

PALOS VERDES HOMES ASSOCIATION, Plaintiff and Respondent, v. STACY RODMAN et al., Defendants and Appellants.

---

COUNSEL

Stuart W. Willis for Defendants and Appellants.

Sidney F. Croft for Plaintiff and Respondent.

---

OPINION

**HASTINGS, J.**—Defendant/appellant Stacey Rodman (Rodman) resides on the Palos Verdes Peninsula in an area governed by conditions, covenants and restrictions (CC&Rs) recorded by plaintiff/respondent Palos Verdes

Homes Association (the Association) on July 15, 1923. The CC&Rs include a provision which requires prior approval by the Association of plans and specifications for any works of improvement to be done on any of the "covered" properties.[1]

Defendant/appellant Servamatic Solar Systems (Servamatic) contracted with Rodman to install a passive solar water hearing unit on the roof of the Rodman home. On March 20, 1983, Servamatic sought approval from the Association for this installation; approval was denied. On July 26, 1983, when the Association discovered that Servamatic had installed the system, it sent a letter to Rodman notifying him that his property was in a condition of noncompliance with the CC&Rs and enclosed a copy of its solar unit guidelines.[2] On August 15, 1983, the Association received a letter from Servamatic informing it that Servamatic had agreed to indemnify Rodman against all legal expenses incurred in defending his rights to solarize his home. Servamatic went on to cite portions of Government Code section 65850.5 and Civil Code section 714,[3] claiming these statutes precluded the Association from interfering with installation of solar energy systems.

---

[1]When an owner seeks to install a solar unit, he or she must comply with the requirements of the solar unit guidelines formulated by the Association's Art Jury.

[2]These guidelines provide as follows: "1. Solar Units not on the roof should be maintained a minimum of 5' from property line and concealed from the neighboring view, and a fence or wall of sufficient height to accomplish same may be appropriate. [¶] 2. Solar Units on a roof should be within the wall line of the structure. However, the Art Jury may require more roof area between solar unit and roof edge if the roof overhang is minimal. [¶] 3. All aluminum trim should be bronze anodized or otherwise color treated. [¶] 4. Solar Units should be in or below the plane of roofing material. [¶] 5. Solar Unit should be constructed of rigid materials. (Units may not be of flexible materials). [¶] 6. All plumbing lines should be concealed and the method of installation shown and detailed. [¶] 7. Panel material should be dark in color. [¶] 8. Sample of the proposed solar unit should be submitted with application. [¶] 9. Professionally drawn construction details which apply to specific installations should be provided. They should be drawn to scale and should clearly show all elevations, assembly, the attachment to the roof structure and proposed location on the lot or building. [¶] 10. Calculations should be provided verifying the number and/or area of panels required. [¶] 11. Photographs should be submitted showing the location of the proposed solar units and their visibility from neighboring structures, street or streets. [¶] 12. A cover plate or the glazing should be either transparent or white to reduce the reflectance of light. Cover material, if flammable, should be self extinguishing. [¶] The Art Jury may ask for alternative combinations in smaller groupings when large areas of grouped solar panels are found not to be aesthetically satisfactory."

[3]Government Code section 65850.5, in pertinent part, provides: "The legislative body of any city or county shall not enact an ordinance which has the effect of prohibiting or of unreasonably restricting the use of solar energy systems other than for the preservation or protection of the public health or safety. This prohibition shall be applicable to charter cities . . . [¶] This section shall not apply to ordinances which impose reasonable restrictions on solar energy systems. However, it is the policy of the state to promote and encourage the use of solar energy systems and to remove obstacles thereto. Accordingly, reasonable restrictions on a solar energy system are those restrictions which do not significantly increase the cost of the system or significantly decrease its efficiency, or which allow for an alternative

On October 5, 1983, the Association filed its complaint for injunctive and declaratory relief against Rodman and Servamatic. Rodman answered; Servamatic answered and cross-complained. Its cross-complaint stated causes of action for interference with business and for injunctive and declaratory relief. All parties sought a judicial determination of their respective rights and obligations under section 714, quoted, *ante*, in footnote 3. On November 1, 1984, all parties stipulated to a bifurcation of the issues of declaratory relief of the complaint and cross-complaint from the issues of injunction and damages.

The issues of declaratory relief were tried before the court on January 23, 1985. Judgment for the Association was filed on February 14, 1985; it provided ". . . 1. That defendants are enjoined from maintaining the solar units on the property . . . [¶] 2. That defendants are ordered to comply with requirements of the Art Jury of the Palos Verdes Homes Association within ninety (90) days of entry of judgment herein. [¶] 3. If defendants do not comply with the requirements of the Art Jury of the Palos Verdes Homes Association within ninety (90) days of entry of judgment herein they are ordered to remove the solar units . . . [¶] 4. The restrictions of the Palos Verdes Homes Association on solar energy systems installed by defendants are reasonable and met the standards set forth in California Civil Code, Section 714. [¶] 5. Plaintiff, Palos Verdes Homes Association, have and recover its costs in the amount of $92.00 from defendants."

Rodman and Servamatic (both as appellants) have joined in the appeal from this judgment. They urge us to find that as a matter of law the Association's solar unit guidelines are in violation of the spirit and intent of section 714. Specifically, appellants argue that these guidelines "effectively prohibit or restrict" installation of solar energy units in that they significantly increase the cost of a system, decrease a system's efficiency and do not allow for "an alternative system of comparable cost and efficiency," all in contravention of the policy stated in section 714, ". . . to promote and encourage the use of solar energy systems and to remove obstacles. . . ." In support, appellants cite the testimony regarding the three types of solar

system of comparable cost and efficiency. . . ."

Civil Code section 714, in pertinent part, provides: "Any covenant, restriction, or condition contained in any deed, contract, security instrument, or other instrument affecting the transfer or sale of, or any interest in, real property which effectively prohibits or restricts the installation or use of a solar energy system is void and unenforceable. [¶] This section shall not apply to provisions which impose reasonable restrictions on solar energy systems. However, it is the policy of the state to promote and encourage the use of solar energy systems and to remove obstacles thereto. Accordingly, reasonable restrictions on a solar energy system are those restrictions which do not significantly increase the cost of the system or significantly decrease its efficiency, or which allow for an alternative system of comparable cost and efficiency. . . ."

All subsequent references are to the Civil Code.

systems allowed by the California State Energy Commission: active (or flat plate); passive (Integral Collector System (ICS)); and thermosyphon (a combination of both). Appellants assert that the guidelines allow installation of active systems, but effectively preclude installation of the ICS, the only type appellants install, because it sits 18 inches atop the roof, is painted black, and looks like an up-side-down bathtub; and that the guidelines would require the ICS to be set into the roof (guideline 4), adding between $1,400-$1,800 to the cost of installation.

The Association counters that the pertinent and controlling language of section 714 is that which finds "reasonable restrictions" to include those ". . . which allow for an alternative system of comparable cost and efficiency." ■ The Association argues that the solar unit guidelines do not prohibit all solar units but are formulated to promote the installation of solar units which are comparable in costs and aesthetically acceptable. We concur.

■ The right to enforce covenants that require approval of construction has long been recognized in California. (*Hannula* v. *Hacienda Homes* (1949) 34 Cal.2d 442, 444-445 [211 P.2d 302, 19 A.L.R.2d 1268].) ■ The issue here is whether the Association's Guidelines are a "reasonable restriction" on the installation of solar units, as required by section 714. This is a question of fact to be determined by the trier of fact. Its conclusion will not be disturbed unless unsupported by substantial evidence. (*Bowers* v. *Bernard* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925].)

■ The evidence presented at the court trial included testimony by William Nelson Rowley, Ph.D., in mechanical engineering. Dr. Rowley, an engineer for 30 years and member of numerous professional organizations, has been designing and selling solar systems since 1974, designing and/or installing more than 250 systems. In October 1983, he was hired as a consultant to the Association to study and determine whether the Association's solar guidelines complied with section 714. His study included a comparison of the costs of various solar systems, including appellant's; their positive and/or negative aspects; capacity; weight; insulation; tank temperature design; efficiency; output and warranties. Based on his study comparing 26 systems installed on the Palos Verdes Peninsula with appellant's ICS, he concluded the solar units permitted by the Association guidelines were comparable to the ICS in performance and costs.

Given this evidence and the fact that appellant's own witness agreed that the various solar systems discussed by Dr. Rowley were comparable, we cannot say as a matter of law that the trial court erred. The evidence before

the court, partially summarized above, clearly supports the judgment rendered.

The judgment is affirmed.

Ashby, Acting P. J., and Eagleson, J., concurred.