[No. B222531. Second Dist., Div. Two. Oct. 3, 2011.]

TESORO DEL VALLE MASTER HOMEOWNERS ASSOCIATION,
Plaintiff and Respondent, v.
MARTIN GRIFFIN et al., Defendants and Appellants.

COUNSEL

Law Offices of Michael L. McQueen and Michael L. McQueen for Defendants and Appellants.

Greenberg Glusker Fields Claman & Machtinger and Ricardo P. Cestero for Plaintiff and Respondent.

OPINION

**DOI TODD, Acting P. J.**—Defendants and appellants Martin and Carolyn Griffin appeal from a judgment following a jury verdict in favor of plaintiff

and respondent Tesoro del Valle Master Homeowners Association (Tesoro) on its claims that appellants installed a solar energy system at their residence in contravention of conditions, covenants and restrictions governing their property. Unmindful of applicable standards of review, appellants raise a host of issues in an effort to undermine the jury verdict. We affirm. The jury properly determined the disputed issues and substantial evidence supported the determinations; Tesoro properly evaluated appellants' application for their system, brought suit and received a jury trial; and the trial court properly exercised its discretion in the admission and exclusion of expert testimony.

## FACTUAL AND PROCEDURAL BACKGROUND

*Tesoro's Governing Documents.*

Tesoro is a nonprofit mutual benefit corporation that manages, administers, maintains, preserves and operates the residences and common areas in the Tesoro community. On May 29, 2003, the developer of the Tesoro community recorded with the Los Angeles County Recorder's Office a "Master Declaration of Establishment of Covenants, Conditions, and Restrictions for Tesoro del Valle" (CC&R's). The purpose of the CC&R's is to enhance and protect the value, desirability and attractiveness of the Tesoro community, as well as to give the Tesoro board of directors (Tesoro Board) the authority to maintain community standards.

Article 7 of the CC&R's addresses the duties and responsibilities of Tesoro's volunteer architectural control committee (ACC), providing that homeowners must obtain the ACC's approval before making any improvements to their property. Section 7.2 of the CC&R's outlines the application process, providing the application requirements and stating that the ACC may grant approval only if the applicant has complied with those requirements and the ACC, in its discretion, concludes that the proposed improvement conforms to the CC&R's and is harmonious with the existing development.

Section 8.1.18 of the CC&R's reiterates that "[t]here shall be no construction, alteration, or removal of any Improvement in the Project (other than repairs or rebuilding done by the Association pursuant hereto) without the approval of the Architectural Control Committee." Further, section 8.1.20 of the CC&R's states: "Within slope areas, no structure, planting, fencing . . . shall be placed or permitted to remain or other activities undertaken which may damage or interfere with established slope ratios, create erosion or sliding problems, or which may change the direction of flow of drainage channels or obstruct or retard the flow of water through drainage channels." That provision also imposes on the homeowner the duty to maintain the landscaping installed on the slope by Tesoro.

In December 2003, Tesoro approved design guidelines (Design Guidelines) to "help assure continuity in design, which will help preserve and improve the appearance of the community." Section III, paragraph G, specifically directed to the architectural standards for solar energy systems, provides: "As provided for in Section 714 of the California Civil Code, reasonable restrictions on the installation of solar energy systems that do not significantly increase the cost of the system or significantly decrease its efficiency or specified performance, or which allow for an alternative system of comparable costs, efficiency, and energy conservation benefits may be imposed by the [ACC]. [¶] Whenever approval is required for the installation or use of a solar energy system, the application for approval shall be processed and approved by the Committee in the same manner as an application for approval of a modification to the property, and shall not be willfully avoided or delayed."

*Appellants' Solar Energy System Installation.*

In 2005, appellants purchased their home at 29313 Hacienda Ranch Court (property) in the Tesoro development.[1] Their corner property was approximately 15,000 square feet and included a slope outside the perimeter wall. They were provided with a copy of the CC&R's at that time and understood they would be bound by them. They also received Tesoro's Design Guidelines and agreed to be bound by those as well. Appellants were aware that they were required to maintain their property, including the slope, and to submit a written application to obtain approval from the ACC before making any improvements to their property. After submitting the required applications, they made several improvements to their property, such as the installation of a pool, casita and landscaping including a fountain and hardscape.

In 2007, appellants met with Joe Hawley, then with Advanced Solar Electric, who gave them a proposal for the installation of a solar energy system for their property. They told Hawley they were interested in the system being installed on the slope adjacent to their residence. Appellants submitted an application to install a solar energy system on October 2, 2007.[2]

Euclid Management Company was responsible for Tesoro's day-to-day management. When Martin walked the application into the Euclid Management office, association manager Patty Prime told him it was not likely to be approved. She informed him that the application was incomplete in several areas and that she was unaware of any other solar energy systems being

---

[1] We occasionally refer to appellant Martin Griffin individually by first name to avoid confusion and not out of disrespect.

[2] At trial, Martin testified that he believed he submitted the application on September 27, 2007.

installed outside a perimeter wall. According to the CC&R's, the ACC had 45 days from the submission of appellants' application to review and rule on it.

The CC&R's and Design Guidelines specify the application requirements, which include the submission of a plot plan drawn to scale, a detailed description of the proposed materials, a landscape plan and a drainage plan. Appellants' application met none of the requirements. It contained only a handwritten drawing with a rectangle signifying the approximate location of the proposed solar panels. It did not contain information concerning the panels' dimensions, number or color; the setback; the proposed alterations to the landscaping; or the amount of electricity proposed to be generated.

Because of Prime's negative comment, while their application was pending appellants sought a proposal from Hawley for the installation of solar panels on the roof of their residence. They received a proposal on October 10, 2007, which provided for the installation of 36 solar panels on their roof and 22 panels on the slope, but they did not amend their pending application or submit a revised application to reflect the changes. Instead, on November 8, 2007, they signed a $97,000 contract with Advanced Solar Electric for the installation of the new proposed solar energy system.

Also on November 8, 2007—before the expiration of the 45-day time limit—the ACC issued a letter denying appellants' application.[3] The denial letter was misaddressed, however, and appellants did not receive it until November 17, 2007—46 days after October 2, 2007. Summarizing the ACC's position, Tim Collins handwrote four comments on appellants' application noting that the roof of the casita adjacent to appellants' residence should be considered as a location for the panels; that the project's dimensions and minimum setbacks needed to be provided on the site plan; that appellants needed to indicate how the slope beneath the solar panels would be maintained; and that they needed to submit photographs of the existing landscape and superimpose the proposed panel elevation. The ACC was concerned about the proposed slope-mounted system because it was at the entry to the neighborhood, adjacent homes had a direct line of sight, the CC&R's prohibited slope alteration and any alteration or landscape removal could impact drainage. The ACC expected that appellants would address the expressed concerns and submit a revised application.

After receiving the denial letter, Martin attended and spoke at a meeting of the Tesoro Board, informing the board members that he deemed the untimely denial of his project an approval, he had engaged a solar contractor and he

---

[3] The ACC had cancelled its regularly scheduled October meeting because the area was evacuated for a fire. For that reason, it did not consider appellants' application until November 6, 2007.

intended to proceed with his project starting in January 2008. Hawley also tried to respond to the ACC's concerns. The ACC, however, saw no indication that appellants had investigated installation of the solar panels on the casita roof or that they had made efforts to comply with the ACC's other requests. The Tesoro Board also directed Prime to prepare a timeline of events concerning appellants' application, and after review concluded that all applicable time limits had been satisfied.

On December 18, 2007, appellants received a letter from Tesoro's attorney, Jeffrey Beaumont, instructing them to stop further efforts to install a solar energy system on their property. Beaumont wrote to appellants again during the first week of January 2008, instructing them to stop construction.

Nonetheless, appellants proceeded with the installation of a solar energy system in January 2008. The system involved installing solar panels on the roof, and, in preparation for additional panels to be installed on the slope, removing landscaping and pouring a concrete foundation for pylons. Ultimately, by mid-January 2008, appellants agreed to stop construction temporarily pending Tesoro's request for additional information. Following a January 23, 2008 meeting between appellants, Hawley, and Tesoro and Euclid Management representatives, appellants agreed to submit a revised application and Tesoro agreed to review and rule on the application within one week. The supplemental application added the installation of solar panels on the roof.

On January 29, 2008, the ACC denied the supplemental application in part, specifically disapproving the installation of solar panels on the slope and directing appellants to return the slope to its original condition. The ACC remained concerned about the same issues that led to the denial of the initial application, including that appellants had not considered alternative locations. After receiving this letter, appellants directed their contractor to complete the installation of solar panels on the slope. The system was fully installed by the end of March 2008.

### Pleadings, Trial and Judgment.

The Tesoro Board met in an executive session in mid-February and authorized the filing of a lawsuit against appellants. It understood that it had the authority to initiate a lawsuit to enforce the CC&R's without a vote of the entire Tesoro membership. As part of its decision, the Tesoro Board considered that several homeowners had complained about the solar panels on the slope; they had submitted a signed petition and communicated their concerns to Euclid Management.

During a full meeting of the Tesoro homeowners on March 25, 2008, an ACC representative reported that a lawsuit had been filed that day against

appellants because they had not followed architectural procedures before installing a solar energy system on their slope. Tesoro's complaint alleged causes of action for breach of contract and negligence and sought declaratory and injunctive relief. The trial court denied appellants' special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16. Tesoro thereafter filed the operative first amended complaint, which alleged the same causes of action and generally alleged that appellants' solar energy system construction and installation failed to comply with several provisions of the CC&R's.

Appellants answered and cross-complained against Tesoro, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of the California Solar Rights Act (Civ. Code, § 714)[4] and declaratory and injunctive relief. Generally, they alleged that Tesoro failed to comply with both section 714 and its own CC&R's in denying their solar energy system application.

Tesoro moved for summary judgment on its complaint and the cross-complaint, and appellants moved for summary judgment on the complaint only. The trial court denied both motions, ruling that triable issues of fact existed as to whether Tesoro complied or substantially complied with its CC&R's and applicable law; whether Tesoro filed the action in accordance with the CC&R's; whether Tesoro's asserted noncompliance excused appellants' proceeding with the installation of their solar energy system despite having notice of Tesoro's denial; and whether Tesoro's denial complied with section 714. Summarizing, the trial court ruled that the claims in the complaint and cross-complaint turned on whether the parties met their obligations under the CC&R's and governing law.

In June 2009, Tesoro designated four expert witnesses to testify at trial. It designated solar energy forensic consultant Rod Bergen to testify regarding Tesoro's compliance with section 714 in dealing with appellants' solar energy system; the engineering, design and installation of solar energy systems generally; appellants' solar energy system as installed; and alternatives to that system. Appellants did not designate any expert witnesses. In September 2009, the trial court granted Tesoro's motion to strike appellants' untimely expert designation offered three weeks late. The parties later stipulated that appellants would be permitted to call experts to rebut any of the facts relied on by Tesoro's experts; appellants experts were precluded, however, from offering their own opinions.

In October 2009, the trial court granted Tesoro's request for a jury trial. Appellants had objected to trial by jury, arguing that although Tesoro had

---

[4] Unless otherwise indicated, all further statutory references are to the Civil Code.

timely posted jury fees in accordance with a local rule requiring posting 25 days before the actual trial date, it had not complied with Code of Civil Procedure section 631 requiring that jury fees be posted 25 days before the "initial" trial date. The trial court allowed a jury trial, determining there was some ambiguity between the two provisions and that appellants had failed to demonstrate any prejudice as a result of allowing trial by jury.

Before trial began, the trial court also ruled on several motions in limine, denying appellants' motion to preclude Tesoro from offering expert testimony, appellants' motion to limit the testimony concerning the meaning of the CC&R's, appellants' motion to preclude evidence that Tesoro did not timely provide its notice of denial and appellants' motion to preclude evidence that the notice of denial was incomplete.

As part of the jury instructions, the trial court informed the jury about the nature of the dispute and the parties' contentions, stating that Tesoro claimed it was entitled to declaratory and injunctive relief because appellants had breached the CC&R's by installing their solar energy system without written approval. It further stated that appellants claimed Tesoro breached section 714 and the CC&R's by improperly reviewing and denying their solar energy system application, thereby entitling them to declaratory and injunctive relief.

Following a 10-day trial, on November 2, 2009, the jury returned a special verdict. It found that Tesoro did nothing prohibited by the CC&R's or governing law, nor did it fail to do anything required by the CC&R's and governing law with respect to its consideration of appellants' solar energy system. It further found that Tesoro did not breach the implied covenant of good faith and fair dealing, did not violate section 714, responded to appellants' application within the time limits set forth in the CC&R's, responded to appellants' application in the same manner as other applications for a change or modification to property and was entitled to the relief requested. With respect to appellants, the jury found that they either did something prohibited or failed to do something required by the CC&R's and governing law in connection with their solar energy system. It found they were not excused from complying with the CC&R's and governing law. The jury determined that appellants were not entitled to any relief and were required to remove the 22 solar panels from their hillside slope.

In December 2009, the trial court entered a judgment in favor of Tesoro that incorporated the special verdict findings. As part of the judgment, appellants were ordered to remove the 22 solar panels installed on the slope and to return the slope landscaping to its original condition within 60 days of entry of judgment. The trial court further ordered that appellants take nothing on their cross-complaint and awarded Tesoro its attorney fees and costs.

Appellants thereafter filed motions for judgment notwithstanding the verdict and for a new trial. Following a February 10, 2010 hearing, the trial court denied both motions. This appeal followed.

## DISCUSSION

Appellants contend there are multiple reasons why the judgment should be reversed. We loosely classify their arguments into three categories: Legal, procedural and evidentiary. Addressing each category in turn, we find no basis for reversal.

## I. *Appellants' Legal Claims.*

Appellants raise several issues relating to the interpretation and application of section 714, contending that any issue relating to that provision should not have gone to the jury, the CC&R's as a matter of law failed to comply with that provision and Tesoro did not satisfy its burden under the statute. Keeping in mind that we review these questions from a jury verdict, we find no merit to appellants' contentions.

### A. *Appellants Properly Submitted the Question of Compliance with Civil Code Section 714 to the Jury.*

Section 714 prohibits homeowners associations from imposing covenants, conditions or restrictions that effectively prohibit the installation of a solar energy system. (§ 714, subd. (a).) The statute further provides: "This section does not apply to provisions that impose reasonable restrictions on solar energy systems. However, it is the policy of the state to promote and encourage the use of solar energy systems and to remove obstacles thereto. Accordingly, reasonable restrictions on a solar energy system are those restrictions that do not significantly increase the cost of the system or significantly decrease its efficiency or specified performance, or that allow for an alternative system of comparable cost, efficiency, and energy conservation benefits." (§ 714, subd. (b).) Section 714 defines "significantly" as "an amount exceeding 20 percent of the cost of the system or decreasing the efficiency of the solar energy system by an amount exceeding 20 percent, as originally specified and proposed" for a solar water or swimming pool heating system, and as "an amount not to exceed two thousand dollars ($2,000) over the system cost as originally specified and proposed, or a decrease in system efficiency of an amount exceeding 20 percent as originally specified and proposed" for a photovoltaic system. (§ 714, subd. (d)(1)(A) & (B).)

Appellants now contend that the issue of Tesoro's compliance with section 714 was a question of law that should not have been submitted to the

jury. They ignore the well-settled rule " 'that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' [Citations.]" (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1351, fn. 12 [82 Cal.Rptr.3d 229, 190 P.3d 586]; see also *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [88 Cal.Rptr.2d 758] ["It is a firmly entrenched principle of appellate practice that litigants must adhere to the theory on which a case was tried. Stated otherwise, a litigant may not change his or her position on appeal and assert a new theory."].)

Consistently throughout the proceedings below, appellants maintained that the question of Tesoro's compliance with section 714 was a question of fact. In opposing Tesoro's motion for summary judgment, they argued that whether Tesoro acted reasonably under the statute was a question of fact. Before trial began, they did not ask the trial court to determine the issue of compliance as a matter of law. During their opening statement, they told the jury that whether they had the right to install their solar panels involved a "factual determination" that it would have to make. They questioned witnesses about the application of section 714. During closing argument, they reiterated that it was the jury's obligation to apply California law to the situation presented. They stipulated that the jury receive instructions on section 714; the jury received those instructions and determined by special verdict that Tesoro did nothing to violate the statute. In their posttrial motions, they argued that substantial evidence did not support the jury's verdict that Tesoro complied with section 714—not that the jury was prohibited from deciding the question.

Appellants are bound by their decision to submit to the jury the question of Tesoro's compliance with section 714. As aptly stated by the court in *Shumate v. Johnson Publishing Co.* (1956) 139 Cal.App.2d 121, 130 [293 P.2d 531]: "A party cannot successfully take advantage of asserted error committed by the court at his request. [Citation.] The request that the jury be instructed as requested by defendants necessarily constituted consent to submission of the issue as a question of fact to be resolved by the jury. [Citation.] A party cannot request that an issue be submitted to a jury as a question of fact and on review escape the consequences."

■ Moreover, appellants' position below was correct. Section 714, subdivision (b) permits homeowners associations to impose "reasonable restrictions" on solar energy systems that do not significantly increase the cost of the systems or decrease their efficiency. The determination of whether Tesoro's CC&R's and Design Guidelines imposed "reasonable" restrictions was necessarily a question of fact for the jury. (See *Ayres v. City Council of*

*Los Angeles* (1949) 34 Cal.2d 31, 41 [207 P.2d 1] [considering reasonableness of subdivision restrictions enacted pursuant to the Subdivision Map Act (Gov. Code, § 66410 et seq.) and observing "[q]uestions of reasonableness and necessity depend on matters of fact"]; *Terry v. Atlantic Richfield Co.* (1977) 72 Cal.App.3d 962, 966 [140 Cal.Rptr. 510] ["Except where there is no room for a reasonable difference of opinion, the reasonableness of an act or omission is a question of fact, that is, an issue which should be decided by a jury . . . ."]; *Robinson v. City and County of San Francisco* (1974) 41 Cal.App.3d 334, 337 [116 Cal.Rptr. 125] ["Where evidence is fairly subject to more than one interpretation, the question of *reasonableness* is a triable factual issue for the jury to decide."].)

## B. *Substantial Evidence Supported the Jury's Finding That the CC&R's Imposed Reasonable Restrictions.*

Appellants' next—and also new—contention is that the CC&R's and Design Guidelines applicable to solar energy systems are unreasonable as a matter of law. Again, their position on appeal is contrary to the position they took below, where they requested and the jury received an instruction providing: "The parties stipulate that they are bound by the C.C.&Rs, Bylaws, and Design Guidelines which have been referred to as part of the Governing Documents and that such Governing Documents constitute the binding contract between Plaintiff and Defendants." The jury was further instructed that appellants claimed Tesoro breached the governing documents by not complying with their provisions, and that Tesoro had the burden to show its procedures were fair and reasonable. Having submitted to the jury the question of whether Tesoro complied with the CC&R's and Design Guidelines, appellants cannot now ignore the jury's determination by attempting to change the question. (E.g., *Kantlehner v. Bisceglia* (1951) 102 Cal.App.2d 1, 6 [226 P.2d 636] ["Counsel may not so conduct themselves in the trial of a case as to lead the jury to proceed upon one theory and then seek to abandon that theory upon appeal and adopt another one."].)

■ Again, appellants' position below was correct. Generally, homeowners associations have the right to impose reasonable CC&R's on improvements to property. (§ 1354, subd. (a) ["The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development."]; *Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 977 [97 Cal.Rptr.2d 280] ["California and many other jurisdictions have long upheld such general covenants vesting broad discretion in homeowners associations or boards to grant or withhold consent to construction."]; *Palos Verdes Homes Assn. v. Rodman* (1986) 182 Cal.App.3d 324, 328 [227 Cal.Rptr. 81] (*Palos Verdes Homes*) ["The right to enforce

covenants that require approval of construction has long been recognized in California."].) Generally, recorded use restrictions are accorded a presumption of validity and are enforced "unless they are wholly arbitrary, violate a fundamental public policy, or impose a burden on the use of affected land that far outweighs any benefit." (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 382 [33 Cal.Rptr.2d 63, 878 P.2d 1275].)

In *Palos Verdes Homes, supra,* 182 Cal.App.3d 324, the court determined that whether a homeowners association's design restrictions on a solar energy system were reasonable was a question of fact. There, a homeowner installed a residential solar energy system after the Palos Verdes Homes Association had denied his application for installation on the basis that the system did not conform to its solar unit guidelines. The association prevailed on its declaratory relief claim at trial, and the Court of Appeal affirmed. According to the court: "The issue here is whether the Association's Guidelines are a 'reasonable restriction' on the installation of solar units, as required by section 714. This is a question of fact to be determined by the trier of fact. Its conclusion will not be disturbed unless unsupported by substantial evidence. [Citation.]" (*Id.* at p. 328.) The court summarized the testimony of the association's expert, who opined that the solar energy systems permitted by the association's guidelines were comparable to the homeowner's proposed system in performance and cost. (*Id.* at pp. 328–329.) Because the testimony showed that the "guidelines do not prohibit all solar units but are formulated to promote the installation of solar units which are comparable in costs and aesthetically acceptable," the court concluded that substantial evidence supported the judgment. (*Id.* at p. 328.)

█ The same result is required here. The CC&R's provide that the approval or disapproval of applications for improvements "shall be in the sole and absolute discretion of the [ACC] and may be based upon such aesthetic considerations as the [ACC] determines to be appropriate." The Design Guidelines temper this discretion with respect to the installation of solar energy systems. They specifically mirror section 714 and provide that the ACC may impose reasonable restrictions "that do not significantly increase the cost of the system or significantly decrease its efficiency or specified performance, or which allow for an alternative system of comparable costs, efficiency, and energy conservation . . . ." As in *Palos Verdes Homes, supra,* 182 Cal.App.3d at page 328, an expert testified about a comparable alternative system to appellants' installation of 22 panels on their slope. Bergen explained that the installation of 16 to 20 panels in an area above the casita would yield the same performance efficiency but have a 14 percent reduction in output. He further testified that the proposed system would be less expensive to install than the slope panels. Bergen's testimony established that the CC&R's and Design Guidelines allowed for an alternative solar energy system of comparable costs and efficiency that did not significantly increase

the cost or decrease the efficiency of the system sought by appellants. Substantial evidence supported the jury's conclusion that the CC&R's imposed reasonable restrictions that were in compliance with section 714.

■ That the CC&R's permit the ACC to consider the aesthetic impact of a solar energy system provides no basis for reversal. Nothing in the language of section 714 prohibits the consideration of aesthetic impacts. To the contrary, the provision in section 714 that "the application for approval shall be processed and approved by the appropriate approving entity in the same manner as an application for approval of an architectural modification to the property . . ." indicates that the Legislature specifically anticipated that an evaluation of a proposed solar energy system—just as any other proposed improvement—would involve the consideration of aesthetics. (§ 714, subd. (e)(1).) Consistent with that language, the *Palos Verdes Homes* court concluded that guidelines primarily involving aesthetic considerations were reasonable and met the standards of section 714. (*Palos Verdes Homes, supra,* 182 Cal.App.3d at p. 327.)

■ We are likewise unpersuaded by appellants' argument that Tesoro had the burden to propose a comparable alternative system at the time it denied appellants' application. Again, nothing in the language of section 714 imposes such a burden on a homeowners association. The statute requires only that the denial of a solar energy system application be in writing and in a timely manner. (§ 714, subd. (e)(2).) Nor do the CC&R's or Design Guidelines require that the ACC redesign a solar energy system that fails to garner approval. Instead, the burden is on the homeowner to submit an application that is complete and sufficient to generate approval. ACC member Collins testified that it has never been the practice of the ACC to propose an alternative design and that he did not feel qualified to redesign a solar energy system. The evidence established that once the ACC informed appellants of the bases of its denial, it was their burden to reapply for approval of a solar energy system utilizing an application that satisfied the procedural requirements in the CC&R's and that addressed the ACC's concerns about location, safety and aesthetics. Appellants failed to meet their burden.

## II. *Appellants' Procedural Claims.*

Notwithstanding the bases for Tesoro's denial of appellants' solar energy system application, appellants contend that the processes by which Tesoro denied the application and initiated and tried this action were invalid. Specifically, they contend that the ACC's denial was untimely, inadequately mailed and incomplete; that the lawsuit was improperly initiated without a vote of the entire association; and that Tesoro should not have received a jury trial because it did not timely pay its jury fees. With the exception of the payment

of jury fees, appellants submitted these issues to the jury for resolution, asserting during closing argument that the key question in the matter was whether Tesoro followed the appropriate procedures. We find no merit to any of appellants' procedural challenges.

A. *Substantial Evidence Established That Tesoro's Denial Complied with the CC&R's.*

The jury answered "yes" to the question of whether "Plaintiff respond[ed] to Defendants' application for approval or disapproval of the installation of their solar energy system within the time limits set forth in the Governing Documents?" We review a jury's findings of fact under the deferential substantial evidence standard. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053 [68 Cal.Rptr.2d 758, 946 P.2d 427], superseded by statute on another point as stated in *DeBerard Properties, Ltd. v. Lim* (1999) 20 Cal.4th 659, 668 [85 Cal.Rptr.2d 292, 976 P.2d 843].) According to this standard, " ' "the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below.' " (*Bickel*, at p. 1053.) We must view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. (*Ibid.*) We are not at liberty to reweigh the evidence or judge the credibility of witnesses. (*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 849 [176 Cal.Rptr. 239].)

According to a provision in the section of the CC&R's governing improvement applications, "all approvals given pursuant to this Article shall be in writing; and any request for approval which has not been approved or disapproved, in writing, within <u>forty-five</u> (45) days from the date of receipt of all documentation required to be submitted by the Committee shall be deemed approved . . . ." Here, the evidence showed that appellants submitted their solar energy system application on October 2, 2007. Prime testified that Martin personally delivered the application on that date, and the application itself bore a "received" stamp dated October 2, 2007. The jury was entitled to discredit Martin's alternating recollection that he submitted the application on September 27 or October 1, 2007. (E.g., *Moreno v. Sayre* (1984) 162 Cal.App.3d 116, 121 [208 Cal.Rptr. 444] ["It is the province of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses."].)

The ACC denied appellants' application by letter dated November 8, 2007, a date within 45 days of receipt of appellants' application. Thus, substantial evidence supported the jury's finding that Tesoro responded within the time limits provided by the CC&R's. The evidence further showed, however, that

appellants did not receive the denial letter until November 17, 2007, because it was misaddressed. But the jury was instructed that Tesoro had the burden to prove that it "did all, or substantially all, of the significant things that the Governing Documents required it to do or that it was excused [from] doing those things." It was well within the jury's province to conclude that Tesoro substantially complied with its obligations under the CC&R's notwithstanding appellants' receipt of the denial letter 46 days after they submitted their application. (See *Moreno v. Sayre, supra*, 162 Cal.App.3d at p. 121 ["When two or more inferences can be reasonably drawn from the facts, the reviewing court is without power to substitute its deductions for those of the jury."].) The jury could have concluded that the one-day delay was inconsequential given that appellants had already signed the contract to proceed with the installation of their solar energy system several days before the time to rule on their application had expired.

The evidence further showed that Prime mailed the denial letter by regular mail. We reject appellants' argument that this evidence showed Tesoro failed to comply with section 16.11 of the CC&R's, which provides in relevant part: "Any notice permitted or required by this Declaration shall be considered received on the date the notice is personally delivered to the recipient or forty-eight (48) hours after the notice is deposited in the United States mail, first-class, registered or certified mail, postage prepaid and addressed to the recipient at the address which the recipient has provided to the Association . . . ." Contrary to appellants' suggestion that this provision requires notices to be sent by registered or certified mail, the provision is plainly limited to specifying a date by which notice is deemed received if it is sent by first class, registered or certified mail. In short, appellants' argument affords no basis to disturb the jury's finding that Tesoro did all or substantially all of the significant things it was required to do under the CC&R's.

Finally, appellants contend that substantial evidence did not support the jury's affirmative answer to the question "Did Plaintiff respond to Defendants' application for approval or disapproval of their solar energy system in the same manner as any other applications for a change or modification to property?" They argue that the denial letter improperly failed to articulate the bases for the denial. (See § 1378, subd. (a)(4) ["If a proposed change is disapproved, the written decision shall include both an explanation of why the proposed change is disapproved and a description of the procedure for reconsideration of the decision by the board of directors."].) The evidence belies their claim. Martin himself testified that attached to the November 2007 denial letter were four handwritten comments from the ACC indicating that the casita roof should be considered as an alternate location, the site plan failed to show dimensions and setbacks, the application omitted any provision for slope maintenance and the application lacked photographs of the proposed site. Martin conceded that he read the comments when he received the denial

letter. He further conceded that his application in fact lacked the requisite items identified by the ACC as missing. Later, in January 2008, the ACC approved the rooftop panel installation but disallowed the panels on the slope for the reasons stated earlier and discussed by all parties at their January 23, 2008 meeting. Substantial evidence showed that Tesoro provided an adequate explanation of why appellants' solar energy system application was ultimately denied in part.

The evidence further showed that to the extent Tesoro denied appellants' application, it adequately advised them of their appeal rights. (§ 1378, subd. (a)(4).) Though the January 2008 letter did not include information about appeal rights, Martin testified that at all times he had in his possession copies of the CC&R's and Design Guidelines and was aware of the provision for appeal contained in the CC&R's. Section 7.2.8 of the CC&R's provides a detailed explanation of a homeowner's appeal rights in the event the ACC disapproves an application. Evidence that appellants had been advised of their appeal rights through the CC&R's supported the jury's findings that Tesoro did all or substantially all it was required to do under California law and appropriately responded to appellants' application in a manner required for all similar applications. (See *Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649] ["Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute."].)

B. *Substantial Evidence Established That Tesoro Properly Brought This Action in Accordance with the CC&R's.*

As part of its claim that Tesoro failed to comply with its own CC&R's, appellants sought to show that Tesoro improperly initiated this action without a full vote of the membership.[5] The jury resolved this question against appellants, concluding that Tesoro did all or substantially all it was required to do under the CC&R's. Appellants do not contend that the jury should not have resolved this question, but instead simply choose to ignore that conflicting evidence was presented on the issue, the jury received multiple instructions on contract interpretation and the jury decided the issue. Where extrinsic evidence has been properly admitted to aid in the interpretation of a contract, we uphold a reasonable construction of the agreement by the trier of fact which is supported by substantial evidence. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746–747 [131 Cal.Rptr. 873, 552 P.2d 1169].)

---

[5] We decline to address appellants' argument on this issue to the extent it is premised on the denial of their summary judgment motion. (E.g., *California Housing Finance Agency v. Hanover/California Management & Accounting Center, Inc.* (2007) 148 Cal.App.4th 682, 688–689 [56 Cal.Rptr.3d 92] [denial of summary judgment unreviewable after a full trial on the same issues]; *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833–836 [16 Cal.Rptr.2d 38] [same].)

During cross-examination, appellants' counsel questioned Collins about section 4.1.2(k) of the CC&R's, which provides in part that Tesoro has the right "to prosecute or defend, in the name of the Association, any action affecting or relating to the Project or the personal property thereon . . . provided, however, that without the prior vote or written consent of a majority of the voting power of the Members of the Association, the Board may not institute any legal proceeding (including any arbitration or judicial reference proceeding) against any person or entity the cost of which could reasonably be expected to exceed <u>Two Thousand Five Hundred</u> Dollars ($2,500.00)," including an estimate of attorney fees and costs. Collins testified that no poll or vote of the homeowners was taken prior to Tesoro's initiating this action against appellants. Martin similarly testified that he was unaware of any meeting of the homeowners where they were given an opportunity to vote on or receive notice of any intent to file a lawsuit, nor was he given any notice of the special assessment ultimately imposed to finance the litigation.

On redirect examination, however, Collins testified that the Tesoro Board had relied on other provisions in the CC&R's—as well as the advice of counsel—to conclude it had the ability to initiate suit without a full vote. Specifically, it relied on section 4.1.2(e), which gives Tesoro the right "to enforce, in its discretion, the provisions of this Declaration, the Bylaws, Articles and Rules and Regulations of the Association . . . ." He testified that counsel had advised him section 4.1.2(k) was never intended to limit the Tesoro Board's discretion under section 4.1.2(e) to file suit against a homeowner. The Tesoro Board also relied on section 10.9 of the CC&R's, which provides: "Notwithstanding anything herein to the contrary, no judicial or administrative proceeding shall be commenced or prosecuted by the Association unless approved by a majority of the voting power of the membership. This Section shall not apply, however, to (a) actions brought by the Association to enforce the provisions of this Declaration," the collection of assessments, challenges to ad valorem taxes and counterclaims brought by Tesoro.

The owner of Euclid Management, Glennon Gray, further testified that he was familiar with section 4.1.2(k) of the CC&R's and that the provision did not operate to prevent Tesoro from filing an action against a single home-owner to enforce the CC&R's. Rather, his understanding was that it applied when a homeowners association was contemplating suing the developer.

■ On the basis of this testimony, substantial evidence supported the jury's determination that Tesoro complied with the CC&R's in bringing this action without a full vote of the homeowners. (See *Rosen v. E. C. Losch Co.* (1965) 234 Cal.App.2d 324, 331 [44 Cal.Rptr. 377] [" 'The practical construction placed upon the agreement by the parties is, of course, substantial

evidence of their intent.' "]; *Nicolaysen v. Pacific Home* (1944) 65 Cal.App.2d 769, 773 [151 P.2d 567] [" 'The law recognizes the practical construction of a contract as the best evidence of what was intended by its provisions . . . .' "].)

### C. *Tesoro Properly Received a Jury Trial.*

Appellants' final procedural challenge is that Tesoro should not have received a jury trial because it did not post jury fees in a timely manner. Before trial, appellants argued that Tesoro had waived its right to a jury trial on the ground that it had not posted jury fees in accordance with Code of Civil Procedure section 631, subdivision (b), which specifies that jury fees must be deposited "at least 25 calendar days before the date initially set for trial" by "[e]ach party demanding a jury trial . . . ." Tesoro conceded that it had posted jury fees 25 days before the date set for the actual trial, which was timely according to Los Angeles County Superior Court, Local Rules, former rule 5.0. Following briefing and argument by counsel, the trial court permitted a jury trial to go forward, reasoning that Tesoro had demonstrated an inadvertent mistake in relying on the local rules and appellants had failed to demonstrate any prejudice from proceeding with a jury trial.

■ Generally, the failure to deposit jury fees at least 25 calendar days before the date initially set for trial constitutes a waiver of the right to a jury trial. (Code Civ. Proc., § 631, subds. (b) & (d)(5); *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 956 [32 Cal.Rptr.3d 5, 116 P.3d 479].) Nonetheless, in the event of a waiver, the trial court retains discretion to allow a trial by jury. (Code Civ. Proc., § 631, subd. (e); *Johnson-Stovall v. Superior Court* (1993) 17 Cal.App.4th 808, 810 [21 Cal.Rptr.2d 494]; *Gann v. Williams Brothers Realty, Inc.* (1991) 231 Cal.App.3d 1698, 1703–1704 [283 Cal.Rptr. 128].) In exercising such discretion, courts are mindful of the requirement "to resolve doubts in interpreting the waiver provisions of section 631 in favor of a litigant's right to jury trial. [Citations.]" (*Grafton Partners v. Superior Court, supra*, at p. 956.) Accordingly, "[w]here the right to jury is threatened, the crucial focus is whether any prejudice will be suffered by any party or the court if a motion for relief from waiver is granted. [Citation.] A trial court abuses its discretion as a matter of law when '. . . relief has been denied where there has been no prejudice to the other party or to the court from an inadvertent waiver. [Citations.]' [Citations.]" (*Wharton v. Superior Court* (1991) 231 Cal.App.3d 100, 104 [282 Cal.Rptr. 349].)

Here, the trial court properly exercised its discretion to allow the case to be heard before a jury. Tesoro demonstrated that it made an inadvertent mistake by relying on the local rule timeline. (*Winston v. Superior Court* (1987) 196 Cal.App.3d 600, 602–603 [242 Cal.Rptr. 113] [inadvertent waiver shown where failure to post fees occurred from inconsistency in the time requirement among statutes].) And neither below nor on appeal have appellants

demonstrated any prejudice from a trial by jury. (See *Johnson-Stovall v. Superior Court, supra*, 17 Cal.App.4th at p. 811 ["The mere fact that trial will be by jury is not prejudice per se."]; *Gann v. Williams Brothers Realty, Inc., supra*, 231 Cal.App.3d at p. 1704 ["The prejudice which must be shown from granting relief from the waiver is prejudice from the granting of relief and not prejudice from the jury trial."].) "The court abuses its discretion in denying relief where there has been no prejudice to the other party or to the court from an inadvertent waiver." (*Gann v. Williams Brothers Realty, Inc., supra*, at p. 1704.) Indeed, it would have been an abuse of discretion for the trial court to deny relief here.

### III. *Appellants' Evidentiary Issues.*

In two related arguments, appellants contend that the trial court abused its discretion by permitting Bergen to testify as an expert on Tesoro's behalf and by not permitting them to present rebuttal expert testimony. We review the trial court's admission or exclusion of expert testimony under the deferential abuse of discretion standard. (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467 [71 Cal.Rptr.3d 707]; *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 972 [105 Cal.Rptr.2d 88].)

#### A. *Allowing Bergen to Testify Was a Proper Exercise of Discretion.*

Bergen, a licensed contractor and electrical engineer who had installed over 2,000 solar energy systems, evaluated appellants' solar energy system as installed and opined that the slope location was inappropriate based on a number of factors. He further testified that a different configuration of panels could be more efficient and cost effective. He also opined about how removal of the slope panels and replacement with his suggested alternative would affect the efficiency and cost of appellants' solar energy system.

Appellants contend that it was an abuse of discretion to admit Bergen's testimony because he lacked any "special knowledge" that would qualify him as an expert. (Evid. Code, § 720, subd. (a) ["A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates."].) They contend that the matters about which he testified were matters of common knowledge inappropriate for expert testimony. (See Evid. Code, § 801, subd. (a) [expert opinion is admissible when it is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact"]; *People v. Torres* (1995) 33 Cal.App.4th 37, 45 [39 Cal.Rptr.2d 103] ["Expert opinion is not admissible if it consists of inferences and conclusions which can be drawn as easily and intelligently by the trier of fact as by the witness."].) They claim that

Bergen's testimony about the reduction in efficiency resulting from a modification to appellants' system could have been calculated using simple math—that is, a reduction of 22 panels from a total of 56 would have equaled an approximately 40 percent reduction in efficiency.

But the calculation was not so simple. Bergen explained that efficiency is calculated taking into account the angle of the solar panels, the orientation of the panels in relation to the sun, the inverter design, the surface area and the shade factor. He used an inclinometer to measure the angle of the slope panels. In describing the design of his alternative system, Bergen explained how an installation of fewer than 22 panels would result in only a minimal reduction in output. He further testified about the cost of labor and materials for his alternative design. All of these matters were beyond the jury's common knowledge. (See *Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 38 [210 Cal.Rptr. 762, 694 P.2d 1134] [witness qualifies as an expert where he "has sufficient skill or experience in the field so that his testimony would be likely to assist the jury in the search for the truth, and 'no hard and fast rule can be laid down which would be applicable in every circumstance' "].)

Nor are we persuaded by appellants' renewed argument that Bergen should not have been permitted to testify because he described an alternative solar energy system that Tesoro did not propose at the time it disallowed appellants' proposed system. Again, nothing in either section 714 or the CC&R's required Tesoro to design an alternative system, and the evidence established that it was not the ACC's practice to redesign an applicant's proposal. The trial court properly exercised its discretion to permit Bergen to testify about the efficiency and cost of appellants' system as compared to an alternative system.

### B. Appellants Stipulated They Would Not Offer Expert Opinions in Rebuttal.

As a means of resolving Tesoro's motion to preclude appellants from offering any expert testimony because of their failure timely to designate experts, the parties stipulated that appellants would be permitted to call Tesoro's experts and their own experts to rebut the factual bases for any opinions offered by Tesoro's experts. Appellants specifically agreed, however, that they would not be permitted to call their own experts to offer rebuttal opinions. Notwithstanding this stipulation, they now argue that the trial court abused its discretion by not permitting them to call rebuttal witnesses to offer their own expert opinions. By stipulating not to offer expert opinions, appellants have waived any claim on appeal that the trial court abused its discretion by enforcing the stipulation. (E.g., *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [257 Cal.Rptr. 397] ["an appellant waives

his right to attack error by expressly or implicitly agreeing or acquiescing at trial to the ruling or procedure objected to on appeal"].)

██ Even absent any stipulation, we would find no abuse of discretion. The general rule, set forth in Code of Civil Procedure section 2034.300, is that an undesignated expert witness may not testify. An exception to that rule is provided in Code of Civil Procedure section 2034.310, which permits a party to call an undesignated expert witness to testify if the expert has already been designated by another party, or if "[t]hat expert is called as a witness to impeach the testimony of an expert witness offered by any other party at the trial. This impeachment may include testimony to the falsity or nonexistence of any fact used as the foundation for any opinion by any other party's expert witness, but may not include testimony that contradicts the opinion." (Code Civ. Proc., § 2034.310, subds. (a) & (b).) Trial courts strictly construe the foundational fact requirement in Code of Civil Procedure section 2034.310 "so as to 'prevent a party from offering a contrary opinion of his expert under the guise of impeachment.' [Citation.]" (*Mizel v. City of Santa Monica* (2001) 93 Cal.App.4th 1059, 1068 [113 Cal.Rptr.2d 649].)

Here, there was no indication that any of appellants' three proposed rebuttal expert witnesses satisfied the requirements of the statutory exception.[6] Appellants sought to call Jamie Muniak, a certified property manager, to offer his own opinions about customs and practices in the property management industry. They also called Marco Suarez, the owner of Advanced Solar Electric, as a percipient witness, but the trial court sustained objections to questions designed to elicit expert opinion about solar energy system installations. Finally, appellants sought to call a contractor, identified as Mr. Alcantar, to offer an opinion about the cost of Bergen's proposed alternative system and testify about his proposed bid. His testimony would have been based on his construction experience and did not include any testimony designed to establish the falsity or nonexistence of any fact relied on by Bergen in making his costs estimate. In any event, Martin was permitted to testify about other estimates he had received to construct the solar energy system proposed by Bergen.

██ "The trial court is vested with a sound discretion as to the permissible scope of evidence offered in rebuttal. [Citation.]" (*Johnston v. Brewer* (1940) 40 Cal.App.2d 583, 588 [105 P.2d 365].) Because appellants' proffered rebuttal expert testimony failed to satisfy the requirements of Code of Civil Procedure section 2034.310, the trial court properly exercised its discretion in precluding such testimony.

---

[6] That appellants failed to make an offer of proof of their witnesses' proposed testimony is yet an independent reason why any claim of error has been waived. (E.g., *In re Mark C.* (1992) 7 Cal.App.4th 433, 444 [8 Cal.Rptr.2d 856].)

## DISPOSITION

The judgment is affirmed. Tesoro is awarded its costs on appeal.[7]

Ashmann-Gerst, J., and Chavez, J., concurred.

On November 1, 2011, the opinion was modified to read as printed above.

---

[7] In its respondent's brief, Tesoro has requested an award of attorney fees on appeal. We decline to consider its request. California Rules of Court, rule 3.1702(c) sets forth the procedure for claiming attorney fees on appeal. (See also Cal. Rules of Court, rule 8.278(d)(2).)