Filed 1/23/14  Guttman v. Glen Towers Owners Assn. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ABE GUTTMAN, | B239938 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC110813) |
| v. | |
| GLEN TOWERS OWNERS ASSOCIATION, INC., | |
| Defendant and Respondent. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge.  Affirmed.

Law Offices of Bruce J. Guttman and Bruce J. Guttman for Plaintiff and Appellant.

Early, Maslach & O'Shea, B. Eric Nelson and Ronald R. Heard for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiff and Appellant Abe Guttman (Plaintiff), a condominium owner, sued Defendant and Respondent Glen Towers Owners Association, Inc. (the HOA) for declaratory relief to prevent the HOA from enforcing a restriction prohibiting Plaintiff from renting certain first-floor units to individuals who are not members of Plaintiff's family or household. The first-floor units at issue are referred to as "Single Units" and consist of a small living space and bathroom, with no kitchen. In addition to two Single Units, Plaintiff owns an upstairs "Master Unit" in the Glen Towers Condominium Project (Glen Towers).

The governing declaration of covenants, conditions and restrictions provides that (1) only the owner of a Master Unit may own a Single Unit; (2) "Single Units are considered to be an adjunct or extension of the Master Unit, designed for the use and convenience of the owner of the Master Unit"; and, for that reason, (3) "Single Units may be occupied only by those individuals rationally related to the owner of the Master Unit," which shall "include family and other members of the Master Unit owner's household including domestic servants and guests."

In fits and starts for more than two decades, Plaintiff and the HOA wrangled over the HOA's efforts to enforce the restriction against Plaintiff renting his Single Units to non-family and non-household members. Following the HOA's latest effort, Plaintiff filed this declaratory relief action, wherein he asserts that (1) the restriction does not clearly prohibit him from renting Single Units to non-family or non-household members; (2) the restriction constitutes an unreasonable restraint on the use of his property; and (3) the HOA waived and is estopped from enforcing the restriction due to its uneven enforcement of the restriction over the past decades. After a two-day bench trial, the trial court rejected each of Plaintiff's contentions and entered judgment in favor of the HOA. We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.  *Restrictions on the Rental of Single Units and Other Relevant Provisions of the Governing Declaration of Covenants, Conditions and Restrictions*

Glen Towers is a multilevel condominium development consisting of 61 units. Forty-nine of the units are referred to as "Master Units." The Master Units are located on the development's upper floors and range in size from one- to three-bedroom units. Each of the Master Units has a full kitchen. The 12 remaining units are referred to as "Single Units." The Single Units are located on the development's ground floor. Each Single Unit consists of a small living space, with a bathroom, but no kitchen. In addition to these 61 units, there are two apartments located on the first floor designated as a "Manager's Apartment" and "Assistant Manager's Apartment." Each of these apartments has a living area, bathroom and kitchen.

Glen Towers is governed by the "Revised and Restated Declaration of Covenants, Conditions and Restrictions for Glen Towers, a Condominium Project," which the owners adopted and recorded with the Los Angeles County Recorder's Office in 1987 (the CC&R's). Section 1.34 of the CC&R's defines a "Unit" as a "separate freehold estate" that is "not owned in common with Owners of other Condominiums in the Project." Section 5.1, entitled "General Restrictions on Use," places certain restrictions on the "right of a Unit Owner . . . to occupy or use his or her Unit . . . ." With respect to renting out a Unit, section 5.1(b) declares: "*Aside from certain restrictions set out below regarding* [S]*ingle Units*, nothing in [the CC&R's] shall prevent the Unit Owner from leasing or renting out his or her Unit . . . ." (Italics added.)

Section 5.1(d) of the CC&R's sets forth the following restrictions that apply to Single Units:

> " 'Single' Units. Those Units designated as 'Single' Units herein (namely Legal Units 1 through 12 inclusive . . . and commonly known as apartment numbers 101 through 112 inclusive) shall be subject to the following restrictions:

"(1)   Only an owner of another Unit (for the purposes of this section hereinafter referred to as a Master Unit and described as Legal Units 13 through 61 . . .) may own a Single Unit;

"(2)   Said Single Units are considered to be an adjunct or extension of the Master Unit, designed for the use and convenience of the owner of the Master Unit. For this reason, said Single Units may be occupied only by those individuals rationally related to the owner of the Master Unit. Individuals rationally related to the owner of the Master Unit include family and other members of the Master Unit owner's household including domestic servants and guests."

The "Manager's Apartment" and "Assistant Manager's Apartment" are described in section 1.20(a) of the CC&R's as those "apartments designated by [the HOA] from time to time for the exclusive respective use of the Manager or Assistant Manager." Section 1.20(a) further declares that "[t]he Manager's and Assistant Manager's Apartment shall be part of the Common Areas."

2.   *Plaintiff's Ongoing Dispute with the HOA Concerning the Rental of His Single Units*

In the early-1970's, Plaintiff purchased a Master Unit (Apartment 301) together with a Single Unit (Apartment 103) in Glen Towers. Several years later, Plaintiff acquired an additional Single Unit (Apartment 106).

Shortly after purchasing Apartment 103, Plaintiff began renting the Single Unit to tenants who responded to classified ads Plaintiff placed in a local newspaper. Likewise, after purchasing Apartment 106, Plaintiff rented the Single Unit to a series of tenants who were neither family members, domestic employees, nor other members of Plaintiff's household.

4

In August 1997, after discovering one of Plaintiff's newspaper ads, the HOA, through its attorney, wrote to Plaintiff about concerns it had that Plaintiff was renting Apartment 103 in violation of the CC&R's. In response to the letter, Plaintiff advised the HOA's attorney that the ad was a mistake and that Plaintiff had no intention to rent out the Single Unit. Plaintiff also informed the HOA's attorney that he was "well aware" of the restriction against renting out Single Units and that he "would never violate it."

In 1998, the HOA learned that Plaintiff had in fact been renting Apartment 103 to a tenant since September 1997. In July 1998, after interviewing Plaintiff's tenant and obtaining a copy of his lease, the HOA's attorney sent another letter to Plaintiff reminding him of the restriction set forth in section 5.1(d) of the CC&R's. The letter advised that the HOA would seek an injunction against Plaintiff unless Plaintiff agreed to terminate the lease within 10 days.

On August 3, 1998, the HOA filed a lawsuit for injunctive relief, alleging that Plaintiff had leased Apartment 103 in violation of the CC&R's. Plaintiff's attorney responded by sending a letter to the HOA advising that Plaintiff's tenant would be vacating the Single Unit by September 1, 1998. The letter also suggested that Plaintiff might file a cross-complaint against the HOA for mismanagement, waste, and the unauthorized expenditure of association funds. On September 2, 1998, Plaintiff's attorney sent a letter confirming that Plaintiff's tenant had vacated Apartment 103. In response, the HOA offered to dismiss its lawsuit upon execution of a settlement agreement with mutual releases. In October 1998, Plaintiff and the HOA executed the settlement agreement.

On March 10, 2005, the HOA's attorney sent another letter to Plaintiff concerning apparent violations of the restriction against renting out Single Units. According to the letter, the HOA had learned that Plaintiff recently placed another ad in a local newspaper seeking a renter for a "single bachelor unit" which the HOA believed referred to Apartment 106. The letter also expressed concern that Plaintiff might already have a tenant staying in Apartment 103 in violation of the CC&R's.

On March 14, 2005, Plaintiff wrote a letter in response to the HOA, stating: "This letter is to advise you that I do not rent out apartment 103 . . . . My housekeeper stays there at no cost. As to apartment 106[,] it is vacant for my guests."

In July 2005, Plaintiff submitted a signed statement to the HOA attesting that he intended to have his "relative Dalia Shamslan who is also working for me to stay [*sic*] in apt. 106 rent free." In fact, Ms. Shamslan was not Plaintiff's relative; she was Plaintiff's tenant and paid rent to stay in Apartment 106.

On July 5, 2005, Plaintiff signed a declaration under penalty of perjury regarding the occupancy of Apartment 103. In the declaration, Plaintiff acknowledged and agreed, "in accordance with [sections 5.1(b) and 5.1(d) of the CC&R's], that the Single Units must be occupied by individuals 'rationally related to the owner of the Unit' which must be either: (1) family members or other members of the household; (2) domestic servants and/or (3) guests . . . ." Plaintiff's declaration stated: "I acknowledge that I will be allowing Lisa Pruner to occupy the Single Units to act as my Employee (i.e., a domestic servant as defined by the CC&R's) and further agree that I will not accept any rent in connection with her occupancy of the Single Units." Contrary to this declaration, Plaintiff stated that he had always charged rent for Apartments 103 and 106.

On October 3, 2008, the building manager for Glen Towers, Barbara Schwartz, wrote a letter to Plaintiff at the HOA's direction. The letter requested that Plaintiff provide confirmation that the occupant of Apartment 106 "is either a relative of yours or works for you." The letter also stated that the HOA had learned Plaintiff was again advertising Apartment 103 for rent and advised Plaintiff that "this is not allowed by the Association's CC&R's." The record does not disclose whether Plaintiff responded to the letter, but it is apparent that the dispute over Plaintiff renting out his Single Units continued, culminating in Plaintiff filing this lawsuit.

3.      *Plaintiff Sues the HOA for Declaratory Relief*

On December 22, 2010, Plaintiff filed a complaint for declaratory relief and damages against the HOA. The complaint alleged that Plaintiff had ceased renting out his Single Units "under threats from the [HOA] to impose punitive measures against

6

plaintiff . . . ."  The complaint further alleged that, despite preventing Plaintiff from renting his Single Units, the HOA had been and continued to rent out "ground floor non-condominium units"—the Manager's and Assistant Manager's Apartments—in violation of the CC&R's.  The complaint alleged that the restriction against renting Single Units was "vague and ambiguous" and the HOA's conduct in preventing Plaintiff from renting his Single Units was "arbitrary and/or capricious, and . . . not rationally related to the protection, preservation and proper operation of the property and the purposes of the [HOA] as set forth in its governing CC&R's . . . ."  Based on these allegations, Plaintiff sought declaratory relief and damages for loss of past rent.

4. *The Trial Court Finds the Restriction Is Reasonable and that the HOA Did Not Waive the Restriction*

In December 2011, the court held a two-day bench trial on Plaintiff's declaratory relief claim.  In addition to the evidence summarized above, the trial court received testimony from Ms. Schwartz, the building manager at Glen Towers, concerning numerous instances in which Plaintiff had represented that a prospective tenant was either Plaintiff's in-home nurse or a family member.  Ms. Schwartz testified that the HOA's delay in discovering and confronting Plaintiff about his CC&R violations was due largely to Plaintiff's misrepresentations about his tenants.

The HOA also presented expert testimony from an attorney, Adrian Adams, whose practice deals exclusively with the laws affecting homeowner associations.  Mr. Adams testified that units like the Single Units in Glen Towers are present in roughly 10 of the 50-or-so high rise condominiums in Los Angeles.  The units are present in only older luxury high rise buildings.  The units are commonly referred to as "maid units," and were traditionally used as sleeping quarters for domestic workers who would spend their days working in the larger units on the building's upper floors.  The units are always located on the first floor, and consist of a small living area and bathroom with no cooking facilities.

Mr. Adams testified that restrictions similar to those contained in section 5.1(d) of the CC&R's are universally present in buildings that have "maid units."  The restriction

7

against renting these units is intended to address specific concerns over security, safety and impacts on common area amenities. With respect to security, Mr. Adams testified that the size of the units often attracts a transient population, which creates a heightened security risk as compared to renter-families that generally require a larger unit. Mr. Adams explained that the safety concern stems primarily from the lack of cooking facilities in these units. A domestic employee or family member will normally cook in the upstairs unit's kitchen. In contrast, renters, who have no access to the upstairs unit, are more likely to bring in a hot plate or cooking stove, which puts a strain on the electrical system and creates a risk of fire. Mr. Adams also explained that renters, unlike domestic workers, almost invariably expect that when they rent a single unit they also are paying for access to the common area amenities, such as use of the pool, gym, valet parking and other facilities.

Additionally, the trial court received evidence concerning the Manager's and Assistant Manager's Apartments. Unlike the Single Units, the Manager's and Assistant Manager's Apartments both have kitchens. The HOA carefully screens prospective tenants for these apartments and enters into written leases that allow the HOA a level of control to ensure that community facilities are not adversely impacted by the rental arrangement.

In his closing argument, Plaintiff's counsel maintained that the Single Unit restriction in section 5.1(d) was ambiguous and must be strictly construed so as not to create an unreasonable restraint on Plaintiff's use of his property. Counsel also argued that the HOA had waived the restriction by failing to enforce it against Plaintiff, even though the HOA "knew" that Plaintiff was renting his Single Units to non-employees and non-family members. Finally, counsel argued that the HOA should be estopped from enforcing the restriction because it had violated the CC&R's by renting the Manager's and Assistant Manager's Apartments to non-employees.

8

The trial court rejected Plaintiff's contentions. The court found that the restriction was clear on its face and rationally related to concerns over security, safety and impacts on common area facilities, as Mr. Adams had testified. The court also found that the HOA reasonably attempted to enforce the restriction, but had been continuously misled by Plaintiff's representations that the Single Units were occupied by domestic employees or family members in compliance with the restriction.

On January 10, 2012, the trial court entered judgment in favor of the HOA.

## DISCUSSION

1. *The CC&R's Unambiguously Restrict a Master Unit Owner's Right to Rent a Single Unit to Individuals Who Are Not Family, Members of the Owner's Household, or Other Such Rationally Related Individuals*

The trial court determined the restriction set forth in section 5.1(d) of the CC&R's unambiguously prohibits Plaintiff from renting his Single Units to tenants who are not Plaintiff's family members or other members of Plaintiff's household, such as domestic servants. Section 5.1(d) provides, in relevant part: "Those Units designated as 'Single' Units . . . shall be subject to the following restrictions: [¶] . . . [¶] (2) Said Single Units are considered to be an adjunct or extension of the Master Unit, designed for the use and convenience of the owner of the Master Unit. For this reason, said Single Units may be occupied only by those individuals rationally related to the owner of the Master Unit. Individuals rationally related to the owner of the Master Unit include family and other members of the Master Unit owner's household including domestic servants and guests[.]"

Plaintiff contends the trial court erred in concluding the foregoing restriction is unambiguous. In Plaintiff's view, because the term "rationally related" is not defined in the CC&R's, the restriction in section 5.1(d) is subject to a reasonable interpretation under which a Single Unit may be rented to anyone "having some connection to" a

9

landlord.[1]  Plaintiff further contends that extrinsic evidence—specifically, the HOA's alleged intermittent consent to "the common practice of renting out Single Units"— supports his proffered interpretation.  We disagree.

The interpretation of the CC&R's, like the interpretation of any other contract, is a purely judicial function subject to our independent review.  (*Harvey v. The Landing Homeowners Assn.* (2008) 162 Cal.App.4th 809, 817.)  The determination of whether a term used in the CC&R's is ambiguous also is a question of law, subject to de novo review on appeal.  (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351.)  "Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible."  (*Ibid.*)  However, " '[t]he language of the CC&R's governs if it is clear and explicit, and we interpret the words in their ordinary and popular sense unless a contrary intent is shown.  [Citations.]  The parties' intent is to be ascertained from the writing alone if possible.  [Citation.]'  [Citation.]  ' "Where the language of a contract is clear and not absurd, it will be followed.  [Citations.]" '  [Citation.]"  (*Costa Serena Owners Coalition v. Costa Serena Architectural Com.* (2009) 175 Cal.App.4th 1175, 1199 (*Costa Serena*); Civ. Code, §§ 1638, 1640.)

---

[1]  Plaintiff also challenges the HOA's interpretation of the phrase "adjunct or extension."  Plaintiff contends the phrase does not support the HOA's assertion that Plaintiff violated the CC&R's by leasing out "less than [an] entire Unit," which "is composed of both the Master Unit and any Single Unit(s) owned by an Owner."  Because we hold that the restriction against leasing a Single Unit to persons who are not "rationally related" to the owner of the Master Unit is alone sufficient to affirm the trial court's judgment, we do not address Plaintiff's contentions concerning the meaning of "adjunct or extension" in section 5.1(d) of the CC&R's.

When interpreting a contract, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) This statutory directive codifies time-honored canons of contract and statutory interpretation.[2] For example, " '[m]eaning literally, "of the same kind," the doctrine of *ejusdem generis* is of ancient vintage. [Citation.]' [Citation.] As our Supreme Court explained in *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141, ' "[e]jusdem generis* applies whether specific words follow general words in a [contract] or vice versa. In either event, the general term or category is 'restricted to those things that are similar to those which are enumerated specifically.' " ' [Citation.]" (*Major v. Silna* (2005) 134 Cal.App.4th 1485, 1494.)

The doctrines of *expressio unius est exclusio alterius* and *noscitur a sociis* are closely related. "*Expressio unius est exclusio alterius* means that 'the expression of certain things in a [contract] necessarily involves exclusion of other things not expressed. . . .' [Citation.]" (*Dyna–Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13.) The same logic is reflected in the doctrine of *noscitur a sociis*, meaning "it is known by friends." "Under the rule of *noscitur a sociis*, ' "the meaning of a word may be enlarged or restrained by reference to the object of the whole clause in which it is used." ' [Citations.]" (*Id.* at p. 1391, fn. 14.) " 'In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list.' " (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 169.) With these doctrines in mind, we consider Plaintiff's proffered interpretation of the term "rationally related" as used in section 5.1(d) of the CC&R's.

---

[2]    "Contracts . . . are to be construed in accordance with substantially the same cannons of interpretation as statutes." (*Costa Serena, supra,* 175 Cal.App.4th at p. 1199.)

11

In arguing the term "rationally related" is ambiguous, Plaintiff observes that, "[w]hile examples of who is 'rationally related' to a homeowner . . . are provided, no definition of that term is set forth in the CC&R's." Since no definition is provided, Plaintiff suggests we should refer to Webster's Dictionary to find that "the term 'rationally related' means nothing more than 'having some connection to.' " Because "a tenant has a connection to a landlord," Plaintiff concludes, "satisfying the 'rationally related to' standard, based upon the 'ordinary and popular' meaning of the term, is not difficult and is easily satisfied by [Plaintiff], who has a connection to his tenants as well as to those tenants with whom he was also friends."

Before looking to Webster's Dictionary, we think the better course is to refer to the language of the CC&R's, as prescribed by settled principles of contract interpretation. As Plaintiff acknowledges, although "rationally related" is not specifically defined, the CC&R's offer a list of persons who fit the term's intended meaning: "Individuals rationally related to the owner of the Master Unit include family and other members of the Master Unit owner's household including domestic servants and guests[.]" Under the doctrine of *ejusdem generis*, we are directed to interpret the term "rationally related" to encompass only those persons that are "of the same kind" as those enumerated—namely, persons that naturally would be expected to have access to the Master Unit due to their established relationship with the owner, such as family members, domestic servants and guests. Under the doctrine of *noscitur a sociis*, we are to focus on the common characteristic of listed items—again, in this case, permission to access the Master Unit based on an established relationship with the owner. Finally, the doctrine of *expressio unius est exclusio alterius* directs that we interpret "rationally related" to exclude individuals who do not share this salient common characteristic with those listed—that is, tenants with no relationship to the owner, other than a rental arrangement, who are not permitted to access the Master Unit. When these well-established doctrines of contract interpretation are applied, it is clear that the trial court correctly concluded section 5.1(d) prohibits Plaintiff from renting his Single Units to rent-paying tenants who have no permission to access Plaintiff's Master Unit.

12

The extrinsic evidence proffered by Plaintiff fails to expose any latent ambiguity in the term. Indeed, rather than suggest an alternative meaning to which the term "rationally related" is also reasonably susceptible, Plaintiff's purported course of conduct evidence is little more than a recasting of his waiver argument—and one which, as we shall explain, ignores substantial evidence of Plaintiff's efforts to mislead the HOA into believing his tenants were family members or domestic employees. On the other hand, our interpretation is supported by extrinsic evidence concerning the reasonableness of the restriction. We now turn to that evidence.

2. *The Restriction Against Renting a Single Unit to Individuals Who Are Not Rationally Related to the Master Unit Owner Is Reasonable*

The Davis–Stirling Common Interest Development Act (Civ. Code, § 4000 et seq.) (the Act) establishes standards for governance of condominium developments. With respect to restrictive covenants declared in a development's governing documents, the Act provides: "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development." (Civ. Code, § 5975, subd. (a).) Pursuant to Civil Code section 5975's predecessor (former Civ. Code, § 1354), our Supreme Court held recorded use restrictions are accorded a presumption of validity and are to be enforced "unless they are wholly arbitrary, violate a fundamental public policy, or impose a burden on the use of affected land that far outweighs any benefit." (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 382 (*Nahrstedt*).)

Whether a recorded use restriction is reasonable "is a question of fact to be determined by the trier of fact." (*Palos Verdes Homes Assn. v. Rodman* (1986) 182 Cal.App.3d 324, 328.) Thus, the trial court's "conclusion will not be disturbed unless unsupported by substantial evidence." (*Ibid.* [affirming judgment where expert testimony supported trial court's finding that use restriction was "reasonable"].)

13

Substantial evidence supports the trial court's determination that the subject restrictions are reasonable. The CC&R's provide that "Single Units may be occupied only by those individuals rationally related to the owner of the Master Unit." As we explained, established principles of contract interpretation lead us to conclude that an individual is "rationally related to the owner of the Master Unit" if the individual would be permitted to access the Master Unit as a natural consequence of his or her relationship to the owner. Here, the HOA's expert testified about why such a restriction is reasonable in view of the Single Units' unique characteristics and the particular circumstances of condominium communities. Mr. Adams explained the restriction is intended to address specific concerns over security, safety and impacts on common area amenities. He testified that the size of the units often attracts a transient population, which creates a heightened security risk; the lack of cooking facilities coupled with a tenant's inability to access the Master Unit's kitchen increases the likelihood the tenant will bring in a hot plate or cooking stove, intensifying the risk of fire; and renters, unlike domestic workers, are more likely to expect to have access to common area amenities, thereby placing an undesirable strain on these facilities.[3]

In sum, Mr. Adam's testimony amply supports the trial court's conclusion that the subject restriction are reasonably related to "the common interest development as a whole." (*Nahrstedt, supra,* 8 Cal.4th at p. 386.) We have no cause to disturb that conclusion here.

---

[3]     Plaintiff argues the reasonableness of the HOA's position is undercut by its conduct with respect to the Manager's and Assistant Manager's Units. We are not persuaded. As Plaintiff concedes, the evidence established that the Manager's and Assistant Manager's Units both have kitchens, ameliorating the fire risk occasioned by the absence of cooking facilities in the Single Units. The evidence also showed that the HOA carefully screens prospective tenants and requires written leases that give the HOA a level of control to ensure that community facilities are not adversely impacted. This evidence sufficiently rebuts Plaintiff's contention.

14

3. *The HOA Did Not Waive, and Is Not Estopped from Enforcing, the Restriction*

Lastly, Plaintiff argues that even if we were to find, as we do, that section 5.1(d) prohibits Plaintiff from renting his Single Units in the manner challenged by the HOA, we should still reverse the judgment because, in Plaintiff's view, the HOA's "enforcement of such a provision . . . [is] barred by principles of waiver and estoppel." We disagree.

Waiver is the knowing, intentional relinquishment or abandonment of a known right or privilege. (*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1320 (*Habitat Trust*).) "The right to enforce a restrictive covenant may be deemed generally waived when . . . 'substantially all of the landowners have acquiesced in a violation so as to indicate an abandonment.' " (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1380 (*Alfaro*).) Estoppel may be found where " 'the party to be estopped has by false language or conduct "led another to do that which he [or she] would not otherwise have done and as a result thereof that he [or she] has suffered injury." [Citation.]' [Citation.]" (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1315.) Thus, "the party asserting [estoppel] must be ignorant of the true facts and must reasonably rely on the other party's conduct to his detriment." (*Alfaro*, at p. 1381.) As with claims of waiver, "[a] trial court's determination on the issue of estoppel is a factual finding which will be upheld if supported by substantial evidence." (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 850; *Habitat Trust*, at p. 1320 [" ' "The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver.' " ' "].)

In making his case for waiver and estoppel, Plaintiff cites only the evidence that he claims demonstrates "the prohibition at issue has been largely ignored by the Association." By and large, however, he fails to cite the evidence of his numerous

15

representations to the HOA that his tenants were relatives or domestic employees, staying in the Single Units rent-free.

As the appellant, Plaintiff bears the burden of overcoming our presumption that the judgment is correct. For this purpose, he is required to provide an adequate record demonstrating the alleged error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) When, as here, " 'appellants challenge the sufficiency of the evidence, *all* material evidence on the point must be set forth and *not merely their own evidence*. [Citation.] Failure to do so amounts to waiver of the alleged error and we may presume that the record contains evidence to sustain every finding of fact. [Citation.]' [Citations.]" (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 317, italics added.)[4]

In any event, substantial evidence supports the trial court's decision to reject Plaintiffs' waiver and estoppel claims. As we alluded to above, based on evidence of Plaintiff's repeated misrepresentations concerning the identity of his tenants, the trial court could reasonably conclude that the HOA did not *knowingly* waive Plaintiff's violations or allow them to occur. (See *Habitat Trust, supra,* 175 Cal.App.4th at p. 1320.) So too with respect to estoppel, Plaintiff's misrepresentations demonstrate that he was not "ignorant of the true facts" concerning who was permitted to occupy his Single Units. (*Alfaro, supra,* 171 Cal.App.4th at p. 1381.) This evidence is sufficient to affirm the trial court's judgment.

---

[4]     We note that Plaintiff moved to strike the HOA's respondent's brief on the ground that the HOA failed to include proper citations to the record. In exercise of our discretion, we denied Plaintiff's motion. However, we remind the HOA that "[e]ach brief *must*: [¶] . . . [¶] (C) Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C), italics added.) Failure to comply with this rule may result in forfeiture. (See, e.g., *Berg v. Traylor* (2007) 148 Cal.App.4th 809, 812, fn. 2 ["To the extent the briefs contain references to facts that are unsupported by appropriate citations to the record, we have ignored them"].) Be that as it may, the burden rests with Plaintiff, as the appellant, to present an adequate record demonstrating error. The record here, even without aid from the HOA's respondent's brief, amply supports the trial court's judgment.

**DISPOSITION**

The judgment is affirmed. Respondent Glen Towers Owners Association, Inc. is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

17